[No. 15615.     Department One.—December 31, 1894.]

THOMAS STONE, RESPONDENT, v. F. J. OWENS ET AL.,
DEFENDANTS, J. M. WOOD, APPELLANT.

CONTRACTS FOR CONSTRUCTION—ASSIGNMENT AS SECURITY—LIABILITY OF
    PLEDGEE—ASSUMPSIT FOR WORK AND LABOR.—An assignment of con-
    tracts for the construction of a section of seawall, thoroughfare, and
    wharf, and for the excavation of a cellar, as security for money ad-
    vanced, accompanied by a power of attorney to the assignee to collect
    the money to become due under the contracts, is merely a pledge of
    the contracts, creating a lien thereon, subject to which the title and
    general property in the pledge remains in the pledgor; and such pledge
    and lien imply no obligation on the part of the pledgee to perform or
    to pay for the work which the pledged contracts required to be per-
    formed by the pledgors, and the pledgee is not liable to an action of
    assumpsit by employees of the pledgors for work and labor performed.
ID.—ACCEPTANCE OF BENEFIT OF TRANSACTION—CONSTRUCTION OF CODE.—
    Section 1589 of the Civil Code, which provides that a voluntary accept-
    ance of the benefit of a transaction is equivalent to a consent to all the
    obligations arising from it, applies only to a transaction to which the
    person accepting the benefit is a party.
ID.—PARTIES TO CONTRACT—PLEDGEE.—The assignee of a contract who
    receives the assignment as collateral security for money loaned does
    not accept the benefit of the original contract otherwise than as pledgee,
    and does not become a party to the original contract, nor obligate him-
    self to pay for work done under the contract.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*J. C. Bates*, for Appellant.

Plaintiff is not the real party in interest, as the
money, when recovered, will belong to his assignors.
Section 367 of the Code of Civil Procedure is manda-
tory, and this case does not come within the exception
of section 369.   (*Western Dev. Co.* v. *Emery*, 61 Cal. 614;
*Davis* v. *Bilsland*, 18 Wall. 661; *Swift* v. *Swift*, 46 Cal.
267; *Morgan* v. *Overman S. M. Co.*, 37 Cal. 537.)   No
partnership or joint contract between Wood and the
Owens brothers was proven, and no recovery can be
had as against Wood.   (*McCord* v. *Seale*, 56 Cal. 264;

*Weinreich* v. *Johnston,* 78 Cal. 257; *Smith* v. *Moynihan,* 44 Cal. 54.)   Had Mr. Wood paid the men employed by Owens brothers, without an express order or authorization from codefendants, he would have done so at his peril, and would have had no right to recover the same from Owens brothers. (*McGee* v. *City of San Jose,* 68 Cal. 91.)   There was no privity of contract even between the parties by reason of the assignment of the contract to J. M Wood. (*Montanye* v. *Montgomery,* 19 N. Y. Supp. 656; *Turner* v. *McCarty,* 22 Mich. 265; *Sullivan* v. *Portland etc. R. R. Co.,* 94 U. S. 810; *First Nat. Bank* v. *Whitman,* 94 U. S. 343; *Merrill* v. *Green,* 55 N. Y. 270; *Simson* v. *Brown,* 68 N. Y. 355; *Boston Ice Co.* v. *Potter,* 123 Mass. 28; 25 Am. Rep. 9.)

*Reddy, Campbell & Metson,* for Respondent.

As the record shows that the appellant, Wood, actually did assume the obligations of the contract, and for a time actually did pay the laborers, he is liable in this action. (*Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 577; 21 Am. St. Rep. 63.)   A person to whom a chose in action has been transferred for collection may maintain an action thereon. (*Wedderspoon* v. *Rogers,* 32 Cal. 569; *Poorman* v. *Mills,* 35 Cal. 118; 95 Am. Dec. 90; *Wetmore* v. *San Francisco,* 44 Cal. 294; *McPherson* v. *Weston,* 64 Cal. 275; *Toby* v. *Oregon Pac. R. R. Co.* 98 Cal. 497.)

The Court.—In September, 1890, F. J. Owens and J. V. Owens, who were brothers and copartners, entered into a written contract with the state, through the harbor commissioners, to construct a section of the seawall and wharf on the water-front of the city of San Francisco.

On February 11, 1891, the Owens brothers assigned their said contract to defendant, Wood, as security for advances made and to be made by Wood to them, and constituted Wood their attorney in fact, with authority to demand and receive all warrants and moneys due or

to become due them under said contract, by the following instrument:

"For value received, we hereby assign and transfer to J. M. Wood all our right, title, and interest in, to and under the contract to construct section B of the seawall, thoroughfare and wharf on the water-front of the city and county of San Francisco, made by us with the proper authorities of the state of California, and dated September 22, 1890, at said city and county. This assignment is made by us to said Wood by way of security for advances made and to be made by said Wood to us, and we do hereby authorize and empower him, the said Wood, as our attorney in fact, to demand and receive and collect all certificates, warrants, and moneys due or to become due thereunder.

"Witness our hands this eleventh day of February, 1891, at said city and county.        OWENS BROTHERS,

"F. J. OWENS,

"J. V. OWENS."

On March 18, 1891, the Owens brothers entered into a contract with Reiley & Loane, whereby they agreed to excavate a cellar, which contract they also assigned to defendant, Wood, on March 19, 1891, by the following instrument:

STATE OF CALIFORNIA, ⎰
City and County of San Francisco.⎱

"For value received, we hereby sell, assign, transfer, and set over unto J. M. Wood, as security for moneys advanced by him to us, our certain contract and agreement made with Messrs. Reiley & Loane, made on, to wit, March 18, 1891, to excavate a cellar at the southeast corner of Filbert and Sansome streets, in said city and county, amounting to the sum of $3,150, on land belonging to Mrs. Robert C. Johnson.

"Dated March 19, 1891.        F. J. & J. V. OWENS."

At the time of the assignment of the seawall contract the Owens brothers were indebted to the defendant,

Wood, in the sum of about three thousand dollars for money theretofore loaned; and on that day he loaned them fifteen hundred dollars more to enable them to pay the men employed by them as laborers in performance of the seawall contract.

During the following months of April and May, 1891, the Owens brothers carried on the work on both contracts at the same time, and paid their laborers by orders or checks on defendant Wood, which he paid, and which were drawn in the following form:

"$56.                                July 19, 1891.

"Pay to the order of C. Sheridan fifty-six dollars, value received, and charge the same to account of

"F. J. & J. V. OWENS."

In July, 1891, Wood refused to pay any more of such checks, and thereafter Owens brothers failed. At the time of their failure they were indebted to the plaintiff and thirty-three others for labor on the seawall and cellar in sums ranging from three to one hundred and ten dollars, and each of the other thirty-three assigned his demand to the plaintiff, and thereupon plaintiff commenced this action to recover his own demand and that of the thirty-three others assigned to him, the complaint consisting of thirty-four counts, in each of which it is alleged that defendants are indebted to plaintiff in a sum therein named "for work and labor performed for them at their special instance and request."

The separate answer of the defendant, Wood, is a special denial of all material averments in each count so far as they relate to him. Neither of the Owens brothers answered.

The court found that all the allegations of the complaint are true, and that the answer is wholly false, and rendered judgment against the defendant, Wood, alone for the sum of two thousand and sixty-two dollars and fifty-seven cents and costs taxed at ninety-seven dollars and fifty cents.

The parol evidence, without conflict, is positive to the effect that Wood had nothing to do with the work on

the seawall or on the cellar; that he neither directly nor indirectly employed or discharged any laborer, but, on the contrary, that all laborers on the cellar or seawall, including the plaintiff and his assignors, were employed and wholly supervised by the Owens brothers. Nor did Wood pay for any part of such labor, though he paid orders or checks drawn on him by the Owens brothers in favor of laborers, but charged the amount so paid to Owens brothers, as directed to do in such orders.

If Wood was under any obligation to pay plaintiff or his assignors for labor performed on the cellar or seawall, such obligation must be deduced from the written assignments of the cellar and seawall contracts and the law applicable to such assignments. And accordingly counsel for respondent contend that Wood's obligation to pay for such labor is the product of their application of section 1589 of the Civil Code to those assignments, which section reads as follows: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting."

But we think this section applies only to "a transaction" to which the person accepting the benefit is, or purports to be, or is claimed to be, a party, but who would not have been bound by the transaction if he had not accepted the benefit thereof. For example, an alleged principal is not bound by a transaction for him or in his name by an assumed agent without authority, unless he accept the benefits of such transaction; and the application of this section of the Civil Code was thus exemplified by the code commissioners in their annotated edition, by citing the case of *Bennett* v. *Judson*, 21 N. Y. 238, in which the defendant was held to be bound by an unauthorized transaction in his name, on the ground that he had accepted the benefits thereof.

Wood purported to be, and was, a party to the transactions by which Owens and brother assigned to him

the seawall and cellar contracts as security for money advanced, and he received a part, and claims all the benefits of, those transactions; and it appears that he not only consented to all the obligations on his part arising from those transactions, but that he has fully performed and discharged them. But Wood was not, did not purport to be, and was not represented to be, an original party to the seawall and cellar contracts. Did he become a party to those contracts by the assignment of them to him as collateral securit y for money loaned? This seems to be the only remaining material question, and must be answered negatively.

As it appears that the contracts were delivered to Wood at the time they were assigned, and also appears on the face of the written assignments, as well as by extrinsic evidence, that the assignments were intended to operate as collateral security for the payment of debts, the legal effect of the assignments and the power of attorney to receive the warrants, and the money to become due under those contracts, was merely a pledge of those contracts creating a lien thereon subject to which the title to, and the general property in, the pledge remained in the pledgor (Civ. Code, sec. 2888; *Haber* v. *Brown*, 101 Cal. 452, and cases there cited); and such pledge and lien implied no obligation of the pledgee to perform, or to pay for, the work which the pledged contracts required to be performed by the pledgors—the Owens brothers. And surely no such obligation is expressly imposed by those assignments.

Nor is it true that Wood accepted or received any benefit from the transaction of executing the pledged contracts by the parties thereto, in the sense in which the word "benefit" is used in section 1589 of the Civil Code. True, he received part payment by Owens brothers of their debt to him from proceeds of their work done under those contracts; but other creditors of Owens brothers may have received payments from the proceeds of that work before the contracts were pledged to Wood; and creditors of contractors are often

paid from the proceeds of work done under contract. But to say that all creditors who are thus paid accept or receive a benefit from the contract under which the work was done, in the sense of section 1589 of the Civil Code, and thereby obligate themselves to pay for such work, would be to give that section not only an absurd, but an outrageously unjust, effect. Yet Wood's relation to the pledged contracts differs from that of the general creditors only in that he had secured a lien upon the proceeds of the work. But this distinction does not remove absurdity, nor mitigate the injustice. Why should a creditor who is secured by a pledge be in a worse condition than those who have no collateral security?

The case of *Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 574, 21 Am. St. Rep. 63, cited by respondent, is not in point. It differs from this case in several respects; but the most important difference, and that which makes it inapplicable, is this: that the assignment of the contract in that case was absolute, and was so intended by the parties. Neither party to it claimed or pretended that it was intended as security for a debt or for the performance of any act.

Other points made by the appellant are deemed unimportant in view of the construction which we have given to the assignments of the contracts and to section 1589 of the Civil Code.

The judgment and order are reversed and the cause remanded.