[Civ. No. 2085. Fifth Dist. May 28, 1975.]

ROBERT J. BLACK et al., Plaintiffs and Appellants, v.
JERE N. SULLIVAN, Individually and as Executor, etc., et al.,
Defendants and Respondents.

## COUNSEL

Conron, Heard & James, Conron, James & Kirkorian, Calvin H. Conron, Jr., and Jules S. Rensen, for Plaintiffs and Appellants.

Vizzard, Baker, Sullivan, McFarland & Long, Vizzard, Baker, Sullivan & McFarland, Allan H. McFarland, Jere N. Sullivan, King, Eyherabide, Anspach, Newell & Friedman, King, Eyherabide, Anspach, Friedman, Robinson & W. E. James, Oliver U. Robinson and Robert J. Anspach for Defendants and Respondents.

## OPINION

BROWN (G. A.), P. J.—In essence, this is a suit for money damages commenced under the provisions of Civil Code section 2943[1] by the debtor-trustor against the beneficiary-payee of a note secured by a deed of trust and against the assignees for security of the note and deed of trust.

Plaintiffs, Robert J. Black and Joycelyn E. Black (hereinafter "Blacks"), the debtors-trustors, appeal from a summary judgment in favor of the defendants, Jere N. Sullivan, as executor of the estate of Francis O. Sullivan (hereinafter "F. O. Sullivan"), Jere N. Sullivan,

---

[1]Civil Code section 2943 as it relates to the facts of this case in sum requires a "beneficiary of a deed of trust, or his assignees" to supply to the trustor or escrow holder within 21 days after receipt of written demand certain specified information relating to the status of the deed of trust and note (see Civ. Code, § 2943, subds. (a)-(g)), including the amount of the unpaid balance of the obligation. If the beneficiary "willfully fails to prepare and deliver such statement, he is liable to the entitled person for all damages which he may sustain by reason of such refusal . . . ."

individually (hereinafter "Jere"), and Vizzard, Baker, Sullivan & McFarland, a copartnership (hereinafter "Law Firm"), all of whom, except Jere individually, were assignees for security of the note and deed of trust. A motion for summary judgment filed by the defendants Harold and Miriam Schnaidt (hereinafter "Schnaidts"), who were the beneficiaries under the deed of trust, was denied. That order is nonappealable and therefore is not before us.

On November 19, 1964, Schnaidts sold certain rural real property in the Mojave-Tehachapi area of Kern County to Jack and Jeannette Kalpakoff. As part of the purchase price, Kalpakoffs executed a promissory note in favor of Schnaidts for the sum of $144,000, secured by a deed of trust on the real property. On December 31, 1964, Blacks purchased the real property from Kalpakoffs and assumed the note and deed of trust in favor of Schnaidts.

Between November 20, 1964, and July 19, 1968, F. O. Sullivan[2] made three separate loans totaling $86,000 to Schnaidts, each of which was secured by a separate assignment of Schnaidts' beneficial interest in the Black-Schnaidt deed of trust "solely for the purpose of securing the payment" of the Schnaidt-F. O. Sullivan obligations.

On March 12, 1968, Schnaidts assigned their beneficial interest in the Black-Schnaidt deed of trust "solely for the purpose of securing legal and/or attorney's fees due and owing and to become due and owing by [Schnaidts] to said Vizzard, Baker, Sullivan & McFarland [Attorneys at Law] for a period of ten years from date."[3]

All payments on the Black-Schnaidt deed of trust were made by Blacks to Schnaidts, none having been made to any of the assignees for security.

On December 22, 1970, Blacks opened an escrow for the sale of said real property for $392,000, with a closing date of March 3, 1971.

---

[2] While this litigation was pending in the superior court F. O. Sullivan died and Jere N. Sullivan, his son, as executor of the estate of Francis O. Sullivan, was substituted as a party defendant. For clarity we will continue to refer to F. O. Sullivan as a party throughout this opinion.

[3] There was also an assignment for security by Schnaidts of their beneficial interest to Lee Trawick as general partner of Hollandale Western, a limited partnership, who was joined by Blacks as a defendant herein. A summary judgment was granted in favor of said defendant, and Blacks have not appealed from that judgment.

Pursuant to the requirements of Civil Code section 2943 (see fn. 1, *ante*), the escrow officer on January 5 and again on January 29 requested a beneficiary statement of Schnaidts. It is undisputed that Schnaidts did not comply with the code section, primarily because the information furnished to the escrow officer did not show the unpaid balance on the Black-Schnaidt deed of trust. On February 24, at the request of Schnaidts, the escrow officer made a written request for a beneficiary statement from Jere, as attorney for F. O. Sullivan, because "the interest of Mr. & Mrs. Schnaidt has been assigned to Francis O. Sullivan. . . ." By letter dated March 3, 1971, Jere, on behalf of the Law Firm as attorneys for both Schnaidts and F. O. Sullivan,[4] furnished some information to the escrow officer, but again it was incomplete, primarily because the unpaid balance on the Black-Schnaidt deed of trust was not shown.

The first three causes of action in Blacks' second amended complaint seek compensatory damages based on the alleged willful failure of F. O. Sullivan and the Law Firm to prepare and deliver a written statement pursuant to section 2943 after demands on January 5, 1971 (first cause of action), January 29, 1971 (second cause of action) and February 24, 1971 (third cause of action). In addition to other incidental damages, it is alleged that as a proximate result of such failure the buyers in the escrow for the sale of the property for $392,000 refused to complete the sale. The fourth cause of action is based on the same facts as the first three causes of action and, in addition to compensatory damages, seeks punitive damages in the sum of $100,000. In the fifth cause of action, Blacks allege a conspiracy among the several defendants (including Schnaidts) to interfere with and prevent the closing of the escrow and the sale of the property by willfully failing to prepare and deliver the statement required by section 2943.[5]

---

[4]Though Jere is named in the complaint as an individual, there is no allegation or evidence that he was an assignee of the beneficial interest as an individual or that demand for a beneficiary statement was ever made on him other than in a representative capacity.

[5]The gravamen of the allegations of conspiracy in the fifth cause of action is:

"Plaintiffs are informed and believe and, based on such information and belief, allege as follows: During the course of said escrow, defendants Harold Schnaidt, Miriam Schnaidt, Frances [*sic*] O. Sullivan and Jere N. Sullivan combined together to unlawfully interfere with and prevent the closing of said escrow in that said defendants, and each of them, wilfully failed to prepare and deliver a written beneficiary's statement in accordance with Civil Code Section 2943; in fact, said defendants rendered to the escrow holder incomplete and inaccurate information; said defendants and each of them executed and recorded or caused to be recorded a notice of default on or about February 5, 1971; said defendants at the time knew full well that their refusal to provide a proper beneficiary statement would prevent closing of said escrow and thus render the property

The sixth cause of action incorporates by reference the allegations of the first four causes of action and seeks general damages in the sum of $100,000 for the alleged intentional causing of emotional distress.

For the reasons to be stated, we have concluded that F. O. Sullivan and the Law Firm, as assignees for security only, and Jere individually as a matter of law had no obligation to furnish the statements required by section 2943; accordingly, the summary judgment in their favor as to the first, second, third, fourth and sixth causes of action must be affirmed. It is also concluded that issues of fact are present in the verified averments of the fifth cause of action and papers submitted in opposition to the motion and the summary judgment in favor of the defendants as to that cause of action must be reversed.

The liability of Jere individually under the allegations of the first second, third, fourth and sixth causes of action may be quickly disposed of. Since Blacks do not contend and the papers they have submitted in opposition to the motion do not support that Jere is either a beneficiary of the Black-Schnaidt deed of trust or an assignee of the beneficiary, no liability could be incurred by him as to those causes of action under the explicit terms of section 2943.

■ For the reasons about to be explained, we have concluded that, as assignees for security only, F. O. Sullivan and the Law Firm had no responsibility to comply with section 2943 upon demand by Blacks.

Section 2943 defines the person obligated to submit such a statement as a "beneficiary of a deed of trust, or his assignees." The assignments to F. O. Sullivan and the Law Firm constituted a transfer of Schnaidts' "beneficial interest" under the deed of trust, together with "all rights accrued or to accrue under said deed of trust . . . solely for the purpose of collateral security" for a separate obligation owed by Schnaidts to the assignees. The assignees agreed to not transfer or encumber said note and deed of trust and to reassign it to Schnaidts upon payment of the obligation owed by Schnaidts to the assignees. Thus it is clear that the assignees did not assume the burdens, liabilities, or obligations accom-

subject to trust deed sale proceedings; thereupon, defendants intended to recovery [*sic*] plaintiffs' property through a trustee's sale for substantially less than the market value of the same, thereby depriving plaintiffs of their substantial equity.

"The aforementioned conspiracy was formed with full knowledge and intent of each defendant to deprive plaintiffs of their equitable interest in the subject real property, or in the alternative to exact payment of an additional $20,000.00 to $30,000.00 not called for by the terms of the note and/or deed of trust."

panying performance of the Black-Schnaidt deed of trust but only received the benefits or rights thereunder.

It has long been the law in California, reaffirmed by the Uniform Commercial Code, that an assignment for security transfers the rights but not the obligations inherent in the assigned contract. In *Stone v. Owens* (1894) 105 Cal. 292 [38 P. 726], the Supreme Court held that an assignee of a contract who received the contract as collateral security for money loaned did not accept the benefit of the original contract other than as pledgee and did not become a party to the original contract or obligate himself to perform the work which the pledged contract required to be performed by the pledgor. (105 Cal. at pp. 297-298.) That case is still viable law.

▪ An assignment for security purposes of a promissory note secured by a deed of trust on real property is subject to the provisions of division 9 of the California Uniform Commercial Code. (Cal.U.Com. Code, § 9102, subd. (3); *Bank of California* v. *Leone* (1974) 37 Cal.App.3d 444, 448 [112 Cal.Rptr. 394]; *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576, 583 [70 Cal.Rptr. 654]; Stewart, *Trust Deed Collateral Loans and the California Commercial Code* (1974) 2 Western St.U.L.Rev. 57; 3 Cal. Commercial Law, Div. 9 (Cont. Ed. Bar) § 1.23, pp. 18-20.)

▪ Under the Commercial Code, an assignment for security purposes of a promissory note and deed of trust as collateral to secure an independent debt does not result in a delegation of duties to perform under the promissory note and deed of trust offered as collateral. California Uniform Commercial Code sections 2210, subdivision (4), and 9317, respectively, provide:

"(4) An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances *(as in an assignment for security)* indicate the contrary; it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. . . ." (Cal.U.Com. Code, § 2210, subd. (4); italics added.)

"The. mere existence of a security interest or authority given to the debtor to dispose of or use collateral does not impose contract or tort liability upon the secured party for the debtor's acts or omissions." (Cal.U.Com. Code, § 9317.)

Subdivision (4) of California Uniform Commercial Code section 2210, *supra,* lays down a general rule of construction distinguishing between a normal commercial assignment which substitutes the assignee for the assignor both as to rights and duties and a financing assignment in which only the assignor's rights are transferred. (Comment, Cal.U.Com. Code, § 2210.)

It is evident by virtue of the above two sections that in a "financing assignment" the "assignee" in such arrangement receives only the rights or benefits inherent in the collateral involved and does not assume the liabilities.

It seems apparent that, in the absence of a clearly expressed intention, the Legislature, by the use of the word "assignees" in section 2943, could not have intended to change long-standing legal principles established both by the courts (see *Stone* v. *Owens, supra,* 105 Cal. 292) and by their own legislation (see references to the California Uniform Commercial Code, *supra*) by imposing a duty upon assignees for security only where one did not exist before.

This conclusion is buttressed by practical considerations, particularly where, as here, the assignee for security had not received any payments on the note and deed of trust and would be required to rely upon the beneficiary for the information necessary to complete the beneficiary statement at the peril of being held liable in damages for failing to do so. In the case of multiple assignments, to impose the duty upon each of several assignees where none has the essential information at hand would be impractical, unrealistic and burdensome.

Accordingly, since neither F. O. Sullivan nor the Law Firm was the beneficiary or his assignee within the meaning of section 2943, they had no statutory duty to supply the beneficiary statement required by that section. In neither the papers filed in opposition to the motion nor in their argument have Blacks raised any other basis upon which liability under the first, second, third, fourth and sixth causes of action may be imposed upon F. O. Sullivan and the Law Firm; accordingly, the summary judgment in their favor on those causes of action was proper.

Blacks vigorously argue that there is an issue of fact as to whether the Schnaidts were agents of F. O. Sullivan and the Law Firm and that if such a relationship is established upon trial the knowledge of Schnaidts of the January 5 and January 29 demands for the beneficiary statement is

imputed to F. O. Sullivan and the Law Firm; and they further argue that the agency relationship renders F. O. Sullivan and the Law Firm liable for Schnaidts' failure to comply with the escrow agent's demands for a beneficiary statement. In our opinion, however, this is an effort to jump the second hurdle before clearing the first, since the argument presupposes that F. O. Sullivan and the Law Firm would be obligated, upon proper demand, to submit such a statement in the first instance. The first hurdle is that, absent such an obligation, an alleged agency relationship between F. O. Sullivan and the Law Firm as principals and Schnaidts as agents is of no consequence; and, as we have shown, F. O. Sullivan and the Law Firm had no such obligation.

■ Turning to the fifth cause of action, it alleges a conspiracy among the several defendants (including Schnaidts) to interfere with and prevent the closing of the escrow and the sale of the property by willfully failing to prepare and deliver the required statement. (See fn. 5, *ante.*)

■ The effect of charging unitary action inherent in the allegations of conspiratorial conduct is to implicate all participating in the common design and thus to fasten liability on those who agree to the plan to commit the wrong as well as those who actually carry it out. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652].) The significance of this form of action " '. . . lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Mox Incorporated* v. *Woods* (1927) 202 Cal. 675, 677-678 [262 P. 302].)

Thus a plaintiff is entitled to damages from such defendants as he can show have united, participated or cooperated in inflicting a wrong on him. (*Loeb* v. *Kimmerle* (1932) 215 Cal. 143, 150-151 [9 P.2d 199]; *Mox Incorporated* v. *Woods, supra,* 202 Cal. at p. 678; *Revert* v. *Hesse* (1920) 184 Cal. 295, 301 [193 P. 943]; *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 404 [343 P.2d 787].) ■ Moreover, since such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances. (*Revert* v. *Hesse, supra,* at p. 301; *Balistreri* v. *Turner*

(1964) 227 Cal.App.2d 236, 241-242 [38 Cal.Rptr. 553]; *Ramey* v. *General Petroleum Corp., supra,* at p. 404; *Anderson* v. *Thacher* (1946) 76 Cal.App.2d 50, 72 [172 P.2d 533].) It is not necessary that the plaintiffs produce evidence showing that the defendants met and actually agreed to undertake the performance of the unlawful act. (*Balistreri* v. *Turner, supra,* at p. 242; *Alfred M. Lewis, Inc.* v. *Warehousemen etc. Local No. 542* (1958) 163 Cal.App.2d 771, 778-779 [330 P.2d 53].) It is settled, however, that "[a] civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 631.)

■ In the case at bench, it is clear that the Schnaidts failed to comply with section 2943. Therefore, the fact that Jere, F. O. Sullivan and the Law Firm were not individually obligated to perform under section 2943 does not prevent their liability for a failure to comply with that section under a theory that they aided, cooperated and assisted in Schnaidts' noncompliance or conspired to interfere with the escrow contract by preventing the closing of the escrow. (See *Rosenthal* v. *Gould* (1969) 273 Cal.App.2d 239, 243-244 [78 Cal.Rptr. 244]; *Anderson* v. *Thacher, supra,* 76 Cal.App.2d at p. 72.)

It remains to determine whether, under the law of summary judgments and with the facts averred by the papers filed by Blacks, the motion for summary judgment should have been denied as to the fifth cause of action.

■ It is, of course, elementary that the motion for summary judgment should be denied if the papers submitted show there is a triable issue of fact (Code Civ. Proc., § 437c; *Daugherty Co.* v. *Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 156 [92 Cal.Rptr. 120]), and if an issue of fact is present the trial court abuses its discretion in granting such a motion (*People* ex rel. *State Lands Commission* v. *Superior Court* (1974) 36 Cal.App.3d 727, 736 [111 Cal.Rptr. 733]; *Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125]). The function of the trial court is "issue finding," not "issue determination" (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62]), and, in reading the papers filed, those of the moving party are to be strictly construed, while those of the opposing party are to be liberally construed. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].)

 In addition to the verified complaint, several depositions were filed and Robert J. Black filed a declaration in opposition to the motion for summary judgment, in which, among other averments, he set forth that each of the defendants was an agent for each of the other defendants and that each and all of the things alleged in the complaint were done by each defendant in the capacity of and as an agent for the other defendants.

Construing the papers filed by Blacks liberally, it appears that an inference could be drawn that the Schnaidts willfully refused to supply a complete beneficiary statement, knowing that Blacks' escrow for the sale of the property would close March 3 and that Jere, individually, as a partner in the Law Firm, and as attorney for Schnaidts and F. O. Sullivan, willfully refused to furnish the required information after a written request in the February 24 letter from the escrow agent. Jere assured Blacks on March 2 that the correct information would be sent to escrow. When Blacks went to see Schnaidts on March 4 and Schnaidts called Jere, both Schnaidts and Jere assured Blacks that they had the calculations of the unpaid balance due and that the figures had been sent to the escrow officer. The letter sent to the escrow officer by Jere on March 5[6] was in fact deficient and did not contain the unpaid balance.

An inference can be drawn from various documents that the Schnaidts and Jere were working in concert to attempt to prevent the sale of the property by Blacks and to regain the property themselves because the property had increased in value. For example, the "Notice of Default and Election to Sell Under Deed of Trust," dated February 5, 1971, was signed by Schnaidts *and* F. O. Sullivan, and when the default was cured and the notice of default was canceled Jere signed the receipt for the money. Jere, as attorney for Schnaidts, was advising and participating in the affairs of Schnaidts during at least January 1971 through March 1971. Also, the Law Firm as an assignee had a personal interest in the value of collateral security, and Jere shared that interest as a partner in the Law Firm.

Thus, there is a clear issue of fact as to whether Jere cooperated, united and participated in the willful failure of the Schnaidts to comply with section 2943.

---

[6]Though the original escrow closed on March 3, 1971, on March 6, 1971, the buyers in the Black escrow agreed to reopen negotiations for the sale of the real property with a new option to buy to be exercised on March 23, 1971. It is alleged by Blacks that since no complete beneficiary statement was sent in March, the buyers elected not to exercise their option to buy.

The alleged conduct of Jere was committed as an individual and while engaged in his performance as an attorney on behalf of F. O. Sullivan in dealings with the Black-Schnaidt note and deed of trust for which the principal, F. O. Sullivan, though innocent, may be liable. (Civ. Code, § 2330; *DeMirjian* v. *Ideal Heating Corp.* (1954) 129 Cal.App.2d 758, 764-765 [278 P.2d 114]; 1 Witkin, Summary of Cal. Law (8th ed. 1974) Agency and Employment, §§ 155, 173, pp. 754-755, 770-771.) Moreover, the Law Firm is properly joined as a defendant because the partners of a partnership are jointly and severally liable for the conduct and torts injuring a third party committed by one of the partners. (Corp. Code, §§ 15013, 15015; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Partnership, § 38, p. 4286.)

The judgment is affirmed as to the first, second, third, fourth and sixth causes of action; the judgment is reversed as to the fifth cause of action; each party to bear his own costs on appeal.

Gargano, J., and Thompson, J.,* concurred.

Petitions for a rehearing were denied June 25, 1975, and respondents' petitions for a hearing by the Supreme Court were denied July 23, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.