Filed 5/20/13  International Fidelity Ins. Co. v. Bank of America CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | C070220 |
| Cross-complainant and Appellant, | (Super. Ct. No. SCV27567) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Cross-defendant and Respondent. | |

A developer obtains a large construction loan to build a luxury vacation resort and enters into contracts to sell several penthouse condominiums at the resort.  The purchasers deposit earnest money which, in accordance with state law, is covered by surety bonds.  The developer defaults on the construction loan and the lender bank forecloses.  The condominium purchasers sue the developer and the sureties for the return of their earnest money deposits.  One surety cross-complains, claiming the bank is indebted to the surety and was unjustly enriched because it received or benefitted from the earnest money deposits, but then refused to release its lien, preventing the sale of the condominiums which caused the purchasers to demand return of their deposits.  Thus

1

begins the surety's unsuccessful search for a cause of action under which the bank can be held liable for the return of the earnest money deposits.

The surety, International Fidelity Insurance Company (IFIC), appeals from a judgment of dismissal after the trial court sustained, without leave to amend, the demurrer of the lender, Bank of America (the Bank), to IFIC's second amended complaint. IFIC contends the trial court abused its discretion in sustaining the demurrer without leave to amend. IFIC contends its causes of action for money had and received and for restitution were well pled. Further, IFIC asserts it can amend its cross-complaint to state causes of action for statutory reimbursement, contractual reimbursement, and subrogation. IFIC proposes to amend its cross-complaint to allege that the IFIC surety bonds were assigned to the Bank under the loan agreement. IFIC contends that under that assignment the Bank assumed the obligations under the surety bonds, including the obligation to reimburse IFIC.

As we will explain, the trial court properly sustained the demurrer without leave to amend. IFIC's claims for money had and received and restitution depend upon the Bank's having an obligation to withdraw or release its lien on the condominium units once they were ready for sale--IFIC failed to allege such an obligation. IFIC's proposed new causes of action all depend on establishing that the Bank assumed the developer's *obligations* under the surety bonds, but the assignment was for security. "It has long been the law in California, reaffirmed by the Uniform Commercial Code, that an assignment for security transfers the rights but not the obligations inherent in the assigned contract." (*Black v. Sullivan* (1975) 48 Cal.App.3d 557, 564 (*Black*).) Because each of IFIC's proposed claims lacks the requisite foundation, IFIC cannot state a valid cause of action against the Bank. Accordingly, we shall affirm the judgment.

2

## FACTUAL AND PROCEDURAL BACKGROUND

In reviewing an order sustaining a demurrer, we assume the factual allegations pleaded to be true and consider matters that may be judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The following facts are alleged or are cognizable by judicial notice.

*Background to IFIC's Cross-Complaint*

Highlands Hotel Company, LLC (Highlands) was the developer of a resort hotel and condominium project at Northstar. To finance the acquisition, development and construction of the project, the Bank made a $147,000,000 construction loan to Highlands, secured by a deed of trust recorded against the project. Highlands entered into sales contracts with various individuals to purchase residential units at the project (purchasers). These purchasers deposited earnest money in escrow. As required by Business and Professions Code sections 11013.2 and 11013.4, Highlands and its development partner, East West Resort Development IX (East West IX), requested that IFIC issue a blanket surety bond to secure return of the deposits. IFIC issued a surety bond on behalf of Highlands in the amount of $3,000,000. Highlands and East West IX executed an indemnity agreement in favor of IFIC. Highlands defaulted on the construction loan and the Bank initiated foreclosure proceedings, causing the court to appoint a receiver to take control of the project.

Several purchasers (plaintiffs) who had deposited earnest money for the purchase of condominiums brought suit against Highlands and the sureties for return of their earnest money deposits. They subsequently filed a first amended complaint.

*IFIC's Cross-Complaint*

IFIC filed a cross-complaint against Highlands, East West IX, and the Bank. IFIC alleged the Bank was indebted to it for "money paid." IFIC also sought declaratory relief as to the Bank's obligations to IFIC and "in connection with any loss or expense incurred by it under the Bond." IFIC alleged, "that by virtue of its receipt of, or benefit by, the

3

earnest money deposits paid to [Highlands] by plaintiffs in this action, and its refusal to release the lien created by the deed of trust recorded against the condominium units ready for sale," the Bank "was unjustly enriched." IFIC alleged that "[t]o the extent it was required to expend monies on account of the Bond," it was entitled to recover such sums from the Bank and to be subrogated to any security held by the Bank in the project.

The Bank demurred to this cross-complaint.

The trial court sustained the demurrer with leave to amend. The court found the factual allegations of the cross-complaint undermined the conclusion that the Bank was indebted to IFIC. The court further found declaratory relief was improper where the primary relief sought was the payment of money. Construing the gist of the declaratory relief cause of action to be a claim for indemnity, the court found the facts alleged insufficient to state such a claim.

*IFIC's Second Amended Cross-Complaint*

The operative pleading on appeal is IFIC's second amended cross-complaint (SACC). The SACC alleged that the earnest money deposits were either paid to the Bank or used to pay for construction and development of the project for the benefit of the Bank. It further alleged that after the condominium units were completed and ready for close of escrow, the Bank "failed and refused to withdraw the lien against the condominium units created by its recorded deed of trust. By refusing to withdraw its subject lien, IFIC is informed and believes that Bank of America prevented the units from being sold."

The SACC purported to state two causes of action against the Bank, the fifth and sixth. The fifth cause of action was a common count for "Money Had and Received." It incorporated the factual allegations and alleged that the Bank "became indebted to IFIC for money had and received."

The sixth cause of action was for equitable relief. It alleged that the Bank was aware that funds invested in the project or paid to the Bank to reduce the loan amount

4

included the earnest money deposits. By receipt of, or benefit by, the earnest money deposits, and its refusal to withdraw its lien against the condominium units, the Bank was unjustly enriched. To avoid the Bank's unjust enrichment, IFIC was "entitled to restitution of monies expended on account of the Bond, and is entitled to recover such sums from the Bank," and was "entitled to be subrogated to the interests including any security held by" the Bank.

*The Bank's Demurrer and the Trial Court's Ruling*

The Bank again demurred, contending the SACC failed to state facts sufficient to constitute a cause of action.

The trial court agreed, sustaining the Bank's demurrer without leave to amend. The court found the Bank's failure to withdraw its lien did not provide a basis for a claim for money had or received. The facts alleged did not show that the Bank was in possession of money it had no right to retain. The sixth cause of action failed to state a cause of action for restitution because it did not allege IFIC tendered any money to the Bank or that IFIC had paid anything. It was also insufficient as a claim for indemnity as the facts alleged did not establish that IFIC and the Bank were joint and severally liable to plaintiffs.

IFIC appeals from the judgment in favor of the Bank.

## DISCUSSION

### I

*Standard of Review*

"A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law. [Citations.]" (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316 (*Osornio*).) Thus, the standard of review on appeal is de novo. (*Osornio, supra,* 124 Cal.App.4th at p. 316.)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts

5

properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.  [Citation.]  Plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.] Allegations must be factual and specific, not vague or conclusionary.  [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

II

*Money Had and Received*

IFIC contends the fifth cause of action in the SACC was a well pled common count for money had and received.  We disagree.

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.' [Citations.]" (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1623.)  "Technically, an action for money had and received lies in cases where one

6

person has in his possession money which in equity and good conscience he ought to pay over to another. [Citation.]" (*Rains v. Arnett* (1961) 189 Cal.App.2d 337, 344.)

IFIC contends that the Bank's direct receipt of money was not required; it was sufficient if money was expended for the Bank's benefit. IFIC contends that by issuing the bond, it enabled Highlands to use the earnest money deposits for the benefit of the Bank, either by enhancing the Bank's collateral or by direct payment on the loan. When the Bank refused to withdraw its lien and prevented the sale of the condominiums, so that plaintiffs demanded return of their earnest money deposits, the Bank became indebted to IFIC in the amount of the deposits.

This argument presupposes that the Bank was obligated to release its lien when the condominium units were ready for sale. IFIC contends it was the Bank's failure to release its lien that made it indebted to IFIC. Indeed, IFIC refers to the Bank's failure to withdraw its lien as "misconduct" and "wrongful." The SACC, however, did not allege that the Bank had an obligation to withdraw its lien as to the condominium units when they were ready for sale and we cannot infer one. Generally, a lender is obligated to release a lien securing its loan only when the loan is repaid. (Civ. Code, § 2941 [duty to execute certificate of discharge upon satisfaction of debt]; see *Gordon v. Hamm* (1998) 63 Cal.App.4th 1324, 1331 [after loan was made, secured lender's sole remaining obligation was to release its lien upon payment in full of the loan balance].) The SACC did not allege that Highlands had repaid the loan from the Bank. To the contrary, the plaintiffs' first amended complaint alleged that when the Bank filed the notice of default against Highlands, Highlands owed more than $140,000,000 on the loan.

Since the fifth cause of action in the SACC fails to allege facts to show that the Bank is indebted to IFAC, it fails to state a cause of action for money had and received.

7

## III

### *Restitution*

IFIC contends the sixth cause of action in the SACC stated a valid cause of action for restitution based on unjust enrichment. IFIC contends that because the Bank received or benefitted from the earnest money deposits and then refused to withdraw its lien so the condominium units could be sold, the Bank was unjustly enriched.

"Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. [Citation.] A person is enriched if he receives a benefit at another's expense. [Citation.] The term 'benefit' 'denotes any form of advantage.' [Citation.] Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution '*only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.*' [Citation.]" (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51, italics added.)

IFIC's claim that the Bank received or benefitted from the earnest money deposits *unjustly* is based solely on the Bank's failure to release its lien. Again, the SACC fails to allege that the Bank had any obligation to release its lien as to the condominium units when they were ready to sell. Absent such an obligation, retaining receipt of or benefit by the earnest money deposits was not unjust. IFIC fails to state a cause of action for restitution.

## IV

### *Amendment of SACC*

IFIC contends it can amend the SACC to state at least three additional causes of action--for statutory reimbursement, contractual reimbursement, and breach of contract by way of subrogation. IFIC asserts it can amend the SACC to allege that Highlands assigned the Bank all right, title, and interest in the IFIC surety bond and such assignment

8

required the Bank to assume Highland's obligations under the bond. It is the Bank's assumption of the obligations under the bond that gives rise to the new causes of action.

IFIC relies on the terms of the loan agreement to establish the assignment.[1] That agreement provided that the borrower could not withdraw any earnest money deposits from escrow or otherwise use them unless three conditions were satisfied: (1) there was no default or adverse material change; (2) the earnest money deposits were insured by a statutory bond, the form and content of which were approved by the Bank; and (3) "Borrower has assigned all its right, title, and interest in such bond to [the Bank] as further security for the Loan." The loan agreement further provided that earnest money deposits were either to be paid to the Bank as a principal payment or put into an account controlled by the Bank. Highlands granted the Bank a security interest in the controlled accounts and all funds therein "as additional security for the Loan."

For purposes of reviewing the trial court's ruling on the Bank's demurrer, we accept as true factual allegations. (*Blank, supra*, 39 Cal.3d at p. 318.) Thus, we accept as true the proposed allegation that Highlands assigned the surety bond to the Bank. The legal effect of that assignment--whether it transferred obligations as well as benefits--is, however, a legal conclusion. A demurrer does not admit the truth of "contentions, deductions or conclusions of fact or law." (*Ibid.*) We independently determine the legal effect of the assignment.

IFIC contends that by accepting the benefits of the surety bond, the Bank also accepted its obligations. These obligations include reimbursing the surety if the surety

---

[1] The loan agreement was attached as an exhibit to the Bank's complaint in its judicial foreclosure action against Highlands. In the proceedings below, the Bank requested and the trial court granted, judicial notice of the foreclosure complaint and exhibit. IFIC requests this court take judicial notice of these documents. We grant the request. We may take judicial notice of the records of any court in this state and of any matter as to which the trial court properly took judicial notice. (Evid. Code, §§ 452, subd. (d); 459, subd. (a).)

9

satisfies the principal obligation.  (Civ. Code, § 2847.)  To establish the Bank's assumption of the obligations, IFIC relies on two provisions of the Civil Code.  Civil Code section 1589 provides:  "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."  Civil Code section 3521 provides: "He who takes the benefit must bear the burden."

The Bank contends these provisions of the Civil Code are inapplicable because the assignment here was an assignment for security.  (See *St. Paul Fire & Marine Ins. Co. v. James I. Barnes Constr. Co*. (1963) 59 Cal.2d 691 (*St. Paul Fire*) [distinguishing between an absolute assignment and a conditional assignment for security].)  This distinction is recognized in the comment to section 10303 of the Commercial Code, dealing with the assignment of leases.  The comment states:  "The subsection states a rule of construction that distinguishes a commercial assignment, which substitutes the assignee for the assignor as to rights and duties, and an assignment for security or financing assignment, which substitutes the assignee for the assignor only as to rights.  . . .  Whether a buyer of leases is the holder of a commercial assignment, or an assignment for security or financing assignment should be determined by the language of the assignment or the circumstances of the assignment."  (U. Com. Code com., reprinted at 23C West's Ann. Cal. Com. Code (2002 ed.) foll. § 10303, p. 403.)  An assignment for security transfers the rights, but not the obligations, of the assigned contract.  (*Black, supra*, 48 Cal.App.3d at p. 564.)

In *St. Paul Fire*, the court found a conditional assignment for security where the language of the assignment stated the assignment was "for better protection of" the assignee.  (*St. Paul Fire, supra*, 59 Cal.2d at p. 699.)  In *Black, supra*, 48 Cal.App.3d at

10

p. 561, the assignment of a note and deed of trust was "solely for the purpose of securing legal and/or attorney's fees." The assignment was found to be an assignment for security which did not obligate the assignees to comply with a statutory requirement to provide a beneficiary statement. (*Black, supra*, 48 Cal.App.3d at pp. 563-564.) Here, the provisions of the loan agreement, upon which IFIC relies for the proposed allegation of the assignment, provides for the assignment of the surety bond to the Bank "as further security for the Loan." This clear language indicates the assignment of the IFIC surety bond was for security only.

Despite this clear language--"as further security"--IFIC contends the assignment of the surety bond was not for security because, it argues, the bond did not secure performance of the loan agreement. We reject this argument. The assignment of the benefits of the surety bond did serve to protect the Bank's collateral. The purchasers' earnest money deposits gave them a purchaser's lien against the condominiums. (Civ. Code, § 3050.) The lien created by Civil Code section 3050 may compete for priority with other encumbrances such as a mortgage or deed of trust. (*Garcia v. Atmajian* (1980) 113 Cal.App.3d 516, 520-521.) Thus, by assuring that it received the benefit of the IFIC surety bond, the Bank assured the priority of its lien.

We conclude that IFIC's proposed amendment to the SACC regarding the assignment to the Bank of the IFIC surety bond does not allow the legal conclusion that the Bank assumed the obligations of the bond. Hence, this proposed amendment will not state a valid cause of action. Since IFIC proposes no other amendment to the SACC, IFIC has failed to demonstrate that it could amend the SACC to state a valid cause of action against the Bank. The trial court properly sustained the Bank's demurrer without leave to amend.

11

## DISPOSITION

The judgment is affirmed.  The Bank shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

                                                       DUARTE                  , J.

We concur:

                RAYE                  , P. J.

              NICHOLSON           , J.