Filed 3/7/13  RLI Ins. v. Bank of America CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| RLI INSURANCE COMPANY, | C069751 |
| Cross-complainant and Appellant, | (Super. Ct. No. SCV27567) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Cross-defendant and Respondent. | |

A developer obtains a large construction loan to build a luxury vacation resort and enters into contracts to sell several penthouse condominiums at the resort.  The purchasers deposit earnest money which, in accordance with state law, is covered by surety bonds.  The developer defaults on the construction loan and the lender bank forecloses.  The condominium purchasers sue the developer and the sureties for the return of their earnest money deposits.  One surety cross-complains, claiming the bank is responsible "in some manner."  Thus begins the surety's unsuccessful search for a cause of action under which the bank may properly be held liable for the return of the earnest money deposits.

1

The surety, RLI Insurance Company (RLI), appeals from a judgment of dismissal after the trial court sustained, without leave to amend, the demurrer of the lender, Bank of America (the Bank), to RLI's first amended complaint. RLI contends the trial court abused its discretion in sustaining the demurrer without leave to amend. RLI asserts it can amend its cross-complaint to state that the RLI surety bonds were assigned to the Bank and under that assignment the Bank assumed the obligations under the surety bonds, including the obligation to reimburse RLI.

As we will explain, the trial court properly sustained the demurrer without leave to amend. RLI's theory of assignment is based on the loan documents. The allegations of RLI's proposed second amended cross-complaint show that according to the loan agreement, the assignment of the surety bonds was "as further security for the Loan." "It has long been the law in California, reaffirmed by the Uniform Commercial Code, that an assignment for security transfers the rights but not the obligations inherent in the assigned contract." (*Black v. Sullivan* (1975) 48 Cal.App.3d 557, 564 (*Black*).) Because RLI's proposed amendment does not, and cannot, allege that the Bank assumed the *obligations* of the surety bonds, its proposed causes of action for statutory reimbursement, equitable subrogation, restitution, equitable indemnity, and implied contractual indemnity must fail. We shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In reviewing an order sustaining a demurrer, we assume the factual allegations pleaded to be true and consider matters that may be judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The following facts are alleged or are cognizable by judicial notice.

*Background to RLI's Cross-Complaint*

The Bank made a $147,000,000 construction loan to Highlands Hotel Company, LLC (Highlands) for the acquisition, development and construction of a resort hotel, including 23 condominium residences, at Truckee, California, and recorded a deed of

2

trust on the property. Highlands entered into sales contracts with various individuals to purchase residential units at the project (purchasers). These purchasers deposited earnest money in escrow. RLI issued a surety bond in favor of the purchasers in the amount of $5,000,000. A second surety, International Fidelity Insurance Company, issued a surety bond in favor of the purchasers in the amount of $3,000,000.[1] Highlands defaulted on the construction loan and the Bank initiated foreclosure proceedings. Highlands declared bankruptcy and a receiver was appointed.

Several purchasers (plaintiffs) who had deposited earnest money for the purchase of condominiums brought suit against Highlands and the sureties for return of their earnest money deposits. They subsequently filed a first amended complaint.

*RLI's Cross-Complaint*

RLI filed a cross-complaint against the receiver, the other surety, and the Bank. As to the receiver and the Bank, RLI sought equitable indemnity. RLI alleged "that the Receivership Estate and Bank of America are responsible in some manner for the occurrences alleged in Plaintiffs' First Amended Complaint, and that their breaches, and/or failures or refusal to perform or consummate, or to prevent the performance of the Sales Contracts is the direct cause of the claims, including, but not limited to, the return of earnest money deposits and damages alleged by Plaintiffs, if any, which Plaintiffs may prove at trial."

The Bank demurred to this cross-complaint.

---

[1] Both surety bonds provided: "Whereas, Principal [Highlands] has elected, in lieu of individual tract bonds, to give this surety bond to the State of California in compliance with Section 11013.2(c) and/or Section 11013.4(b) of the Business and Professions Code of the State of California, as applicable, as a blanket and continuing obligation for the benefit and protection of each and every purchaser of any lot or lots within each and every subdivision now or hereafter offered for sale or lease, or sold or leased by Principal directly or through his agents in the State of California."

The trial court sustained the demurrer with leave to amend. The court found the allegation that the Bank was "responsible in some manner" was insufficient to show the Bank and RLI were jointly and severally liable to plaintiffs as required for equitable indemnity. Even if the cause of action was construed as one for implied contractual indemnity, there was no allegation of a contract between RLI and the Bank.

*RLI's First Amended Cross-Complaint*

RLI's first amended cross-complaint (FACC) alleged that the earnest money deposits were used to pay for construction and development of the project for the benefit of the Bank. The FACC purported to state three causes of action against the Bank. The first was titled "Unjust Enrichment." It alleged that after the condominiums were completed "and despite the fact that the condominium units were available for close of escrow, Bank of America refused to withdraw the lien against the condominium units created by its recorded deed of trust. By refusing to withdraw the subject lien, [RLI] is informed and believes that Bank of America prevented escrows to close on the Sales Contracts and prevented condominium units from being sold to Plaintiffs and Diner." The FACC alleged the Bank's refusal or failure to permit close of escrow on the condominium units "resulted in unjust enrichment" of the Bank because the Bank benefited from the use of the earnest money deposits.

The fourth cause of action was a common count for "Money Paid." It alleged that the Bank "became indebted to [RLI] for money paid, laid out, and expended, or to be paid, laid out or expended on behalf of Highlands Hotel under the RLI Surety Bond."

The fifth cause of action sought declaratory relief. It alleged there was an actual controversy regarding the Bank's obligations to RLI under the surety bonds. RLI contended that by virtue of the Bank's receipt of or benefit by the earnest money deposits and the Bank's refusal to release its lien when the condominium units were ready for sale, the Bank was unjustly enriched, was obligated to pay RLI for sums expended on account of the surety bonds, and that RLI should be subrogated to the interests, including security,

4

held by the Bank. RLI sought a judicial determination of its rights with respect to the Bank to the extent RLI was required to perform under the surety bonds.

*The Bank's Demurrer*

The Bank again demurred, contending the FACC failed to state facts sufficient to constitute a cause of action.

At the hearing on the demurrer, RLI argued it should be granted leave to amend. RLI asserted it could allege new causes of action "based upon written contracts whereby Bank of America may be joint and severally obligated with RLI Insurance Company to the plaintiffs in this action to fulfill the obligations to either close the escrows that are pending or return those deposits." RLI claimed it could allege causes of action based on those contracts for implied merchant indemnity and statutory indemnity.

The Bank responded that RLI had already made numerous attempts to state a cause of action. It noted there were two identical actions pending. The Bank requested judicial notice of RLI's first amended complaint in intervention in the Bank's foreclosure case against Highlands. The Bank asserted it was undisputed that RLI's FACC and RLI's first amended complaint in intervention sought "the same redress from the Bank based on identical claims for Unjust Enrichment, Money Paid, and Declaratory Relief."

The trial court declined to rule on the abatement issue because it was not raised until the Bank's reply to RLI's opposition to the demurrer.[2] The court sustained the Bank's demurrer without leave to amend.

---

[2] A plea in abatement may be made by demurrer. Under Code of Civil Procedure section 430.10, subdivision (c) a party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer, on the ground that "[t]here is another action pending between the same parties on the same cause of action." Because we, like the trial court, do not decide this case on the issue of abatement, we deny the Bank's request for judicial notice of the pleadings related to RLI's complaint in intervention.

5

*Motion for Reconsideration*

RLI moved for reconsideration.  RLI offered a proposed second amended cross-complaint (SACC) based on "new and different facts."  RLI asserted that the SACC alleged that Highlands had assigned to the Bank all its right, title, and interest in the RLI blanket surety bond, the Bank accepted and approved of the form of the bond, and the Bank accepted the benefits of the bond, including the receipt of earnest money deposits.

The proposed SACC alleged, "[i]n connection with the Construction Loan Agreement, Highlands Hotel pledged the earnest money deposits as security to Bank of America."  The Bank controlled the use of the earnest money deposits through the Construction Loan Agreement.  That agreement provided that the borrower could not withdraw any earnest money deposits from escrow unless three conditions were satisfied: (1) there was no default or material adverse change; (2) the earnest money deposits were insured by a statutory bond, the form and content of which were approved by the Bank; and (3) "Borrower has assigned all its right, title, and interest in such bond to [the Bank] as further security for the Loan."  The loan agreement further provided that earnest money deposits were either to be paid to the Bank as a principal payment or put into an account controlled by the Bank.

The proposed SACC alleged that Highlands had satisfied these conditions for withdrawal of the earnest money deposits.  It further alleged that the Bank voluntarily accepted and received benefits of the surety bond and that by voluntarily accepting and receiving these benefits, the Bank "consented to and assumed all the obligations arising under the RLI Surety Bond, including but not limited to any obligations owed by Highlands Hotel to Plaintiffs or to RLI."

The only cause of action in the proposed SACC against the Bank was for declaratory relief.  RLI sought a judicial determination that Highlands had assigned all its right, title, and interest in the RLI surety bond to the Bank; the Bank voluntarily accepted and received the benefits of the bond; by accepting and receiving these benefits, the Bank

6

consented to and assumed the obligations of the surety bond, including any obligations Highlands owes to plaintiffs; the Bank is joint and severally obligated with RLI to plaintiffs to fulfill the obligation of the RLI bond, including the obligations to close escrow or return earnest money deposits; if RLI fulfills these obligations, RLI is entitled to reimbursement from the Bank; and RLI is entitled to equitable indemnity from the Bank for all losses incurred as a result of the RLI surety bond.

The trial court denied the motion for reconsideration. It found RLI failed to allege new or different facts that were not previously known to it. Further, the court noted these facts had been presented and considered at the hearing on the demurrer.

## DISCUSSION

### I

### *Standard of Review*

"A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law. [Citations.]" (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316 (*Osornio*).) Thus, the standard of review on appeal is de novo. (*Osornio, supra,* 124 Cal.App.4th at p. 316.)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.

7

[Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'  [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.  [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary.  [Citation.]"  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

## II

### *Assignment of RLI Surety Bond*

RLI's principle contention is that it is able to amend its cross-complaint to allege that Highlands assigned all its right, title, and interest in the RLI surety bond to the Bank and, as a result of that assignment, the Bank has assumed the obligations of the principal (Highlands) under the surety bond.  RLI contends that factual amendment will permit it to allege causes of action against the Bank for statutory reimbursement and equitable subrogation, as well as cure defects in earlier pleadings and state causes of action for restitution, equitable indemnity and implied contractual indemnity.

We first consider whether RLI is able to amend the FACC to allege that due to the assignment of the RLI surety bond, the Bank assumed the obligations of the principal under that bond.

As recounted *ante*, the proposed SACC alleges that, in connection with the construction loan agreement, Highlands pledged the earnest money deposits to the Bank, the Bank controlled these deposits, and Highlands could only withdraw these deposits if it met certain conditions, including insuring the deposits by a statutory bond and

assigning "all its right, title and interest in such bond" to the Bank "as further security for the Loan;" Highlands had satisfied these conditions; the Bank had accepted and received benefits of the surety bonds, and by doing so, the Bank assumed the obligations of Highlands to plaintiffs or RLI under the bonds.

For purposes of reviewing the trial court's ruling on the Bank's demurrer, we accept as true factual allegations. (*Blank*, *supra*, 39 Cal.3d at p. 318.) Thus, we accept as true the allegation that Highlands assigned the surety bond to the Bank. The legal effect of that assignment--whether it transferred obligations as well as benefits--is, however, a legal conclusion. A demurrer does not admit the truth of "contentions, deductions or conclusions of fact or law." (*Blank, supra,* at p. 18.) We independently determine the legal effect of the assignment.

RLI contends that by accepting the benefits of the surety bond, the Bank also accepted its obligations. These obligations include reimbursing the surety if the surety satisfies the principal obligation. (Civ. Code, § 2847.) To establish the Bank's assumption of the obligations, RLI relies on two provisions of the Civil Code. Civil Code section 1589 provides: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Civil Code section 3521 provides: "He who takes the benefit must bear the burden."

The Bank contends these provisions of the Civil Code are inapplicable because the assignment here was an assignment for security. (See *St. Paul Fire & Marine Ins. Co. v. James I. Barnes Constr. Co.* (1963) 59 Cal.2d 691 (*St. Paul Fire*) [distinguishing between an absolute assignment and a conditional assignment for security].) This distinction is recognized in the comment to section 10303 of the Commercial Code, dealing with the assignment of leases. The comment states: "The subsection states a rule of construction that distinguishes a commercial assignment, which substitutes the assignee for the assignor as to rights and duties, and an assignment for security or financing assignment,

9

which substitutes the assignee for the assignor only as to rights. . . . Whether a buyer of leases is the holder of a commercial assignment, or an assignment for security or financing assignment should be determined by the language of the assignment or the circumstances of the assignment." (U. Com. Code com., reprinted at 23C West's Ann. Cal. Com. Code (2002 ed.) foll. § 10303, p. 403.) An assignment for security transfers the rights, but not the obligations, of the assigned contract. (*Black*, *supra,* 48 Cal.App.3d at p. 564.)

In *St. Paul Fire*, the appellate court found a conditional assignment for security where the language of the assignment stated the assignment was "for better protection of" the assignee. (*St. Paul Fire, supra*, 59 Cal.2d at p. 699.) In *Black, supra,* 48 Cal.App.3d 557, 561, the assignment of a note and deed of trust was "solely for the purpose of securing legal and/or attorney's fees." The assignment was found to be an assignment for security which did not obligate the assignees to comply with a statutory requirement to provide a beneficiary statement. (*Black, supra,* at pp. 563-564.) Here, the provisions of the loan agreement, upon which RLI relies for the allegation of the assignment and the provisions of which RLI quotes in the proposed SACC, provide for the assignment of the surety bond to the Bank "as *further security for the Loan.*" This clear language indicates the assignment of the RLI surety bond was for security only.

Despite this clear language--"as further security"--RLI contends the assignment of the surety bond was *not* for security because, it argues, the bond did not secure performance of the loan agreement. We reject this argument. First, the proposed SACC alleges the assignment was "for security." RLI offers no explanation for its change of position on appeal. Second, the assignment of the benefits of the surety bond did serve to protect the Bank's collateral. The purchasers' earnest money deposits gave them a purchaser's lien against the condominiums. (Civ. Code, § 3050.) The lien, created by Civil Code section 3050, may compete for priority with other encumbrances such as a mortgage or deed of trust. (*Garcia v. Atmajian* (1980) 113 Cal.App.3d 516, 520-521.)

Thus, by assuring that it received the benefit of the RLI surety bond, the Bank assured the priority of its lien.

We conclude that the amendment to the FACC proposed by RLI regarding the assignment to the Bank of the RLI surety bond does not allow the legal conclusion that the Bank assumed the obligations of the bond. We now consider whether, with an amendment that pleads only that the Bank assumed the benefits of the RLI surety bond, RLI can state a cause of action against the Bank. We conclude the answer is no.

### III

### *Statutory Reimbursement*

RLI contends it is able to state a cause of action for statutory reimbursement under Civil Code section 2847, which provides: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section."

RLI's argument in support of this cause of action is premised upon the assertion that the Bank assumed Highlands's obligations under the RLI surety bond. Since this premise is incorrect, RLI cannot state a cause of action for statutory reimbursement because the Bank is not a principal under the surety bond.

### IV

### *Equitable Subrogation*

RLI next contends that it can state a cause of action for equitable subrogation. "Payment of a principal's debt by a surety is the prototypical situation in which the equitable right to subrogation arises. 'Subrogation is the right to recover from the *debtor-obligor*. A surety, e.g., pays the principal debtor's obligation to the creditor, and in equity is substituted for the creditor, or *subrogated* to his rights against the debtor.'

11

[Citation.]"  (*Golden Eagle Ins. Co. v. First Nationwide Financial Corp*. (1994) 26 Cal.App.4th 160, 169, original italics.)

RLI contends the Bank is in the role of debtor-obligor because it assumed Highlands' obligations under the RLI surety bond.  As we have found the assignment of the surety bond, as alleged by RLI, did not transfer the obligations of the bond to the Bank, RLI cannot state a cause of action against the Bank for equitable subrogation.

V

*Unjust Enrichment*

The FACC alleged a cause of action against the Bank for unjust enrichment.  RLI contends it is able to amend the FACC to state a cause of action for restitution.

"There is no cause of action for unjust enrichment.  Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.  [Citation.]"  (*McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1490.)  In reviewing a judgment of dismissal following the sustaining of a general demurrer, we ignore "'[e]rroneous or confusing labels'" and can construe a "purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right to restitution."  (*McBride v. Boughten* (2004) 123 Cal.App.4th 379, 387-388.)

"Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another.  [Citation.]   A person is enriched if he receives a benefit at another's expense.  [Citation.]  The term 'benefit' 'denotes any form of advantage.'  [Citation.]  Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss.  Even when a person has received a benefit from another, he is required to make restitution '*only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it*.'  [Citation.]"  (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51, italics added.)

RLI contends the Bank received the benefit of the use of the earnest money deposits at RLI's expense. To state a valid cause of action for restitution, however, RLI must be able to allege that the Bank received this benefit *unjustly*.

RLI contends it is entitled to restitution under principles of equity. It argues that the Bank was able to use the earnest money deposits only due to the RLI surety bond, which the Bank demanded and approved.[3] RLI's only argument that the benefit of the surety bond to the Bank was unjust is the erroneous assertion that the Bank assumed the obligations of the surety bond.

RLI next contends it is entitled to restitution under Civil Code section 2849. That provision provides: "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." RLI claims it is entitled to the benefit of the security held by the Bank, including Highlands's pledge of the earnest money deposits to the Bank, for the performance of the obligations of under the RLI surety bond.

RLI misunderstands Civil Code section 2849. The term "creditor" in that section refers to the creditor in the surety relationship. "All surety bonds involve a tripartite relationship: 1) a principal (promisor, debtor, or obligor), 2) an obligee (promisee, creditor, or beneficiary), and 3) a surety. [Citations.]" (*State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1108, fn. 6; see also Civ. Code, § 2819 [allowing exoneration of a surety "if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect"].)

---

[3] RLI ignores that the surety bond was required by Business and Professions Code section 11013.2, subdivision (c) or 11013.4, subdivision (b) to protect the purchasers of the condominiums and guarantee return of their deposits.

In this context, the Bank is not a "creditor"; those who contracted to purchase condominium units and gave earnest deposits are the creditors under the RLI surety bond. Civil Code section 2849 does not give RLI a right to recover restitution from the Bank.

RLI has failed to show how it can amend the FACC to state a cause of action for restitution.

## VI

### *Equitable Indemnity and Implied Contractual Indemnity*

RLI cannot state a cause of action for equitable indemnity or implied contractual indemnity because both require that the Bank assumed Highlands's obligations under the RLI surety bond and, as we have discussed, the Bank did not.

"Unlike express indemnity, traditional equitable indemnity requires no contractual relationship between an indemnitor and an indemnitee. Such indemnity 'is premised on a joint legal obligation to another for damages,' but it 'does not invariably follow fault.' [Citation.]" (*Prince v. Pacific Gas & Elec. Co*. (2009) 45 Cal.4th 1151, 1158.) RLI proposes to establish the joint legal obligation of RLI and the Bank to plaintiffs by Highlands's assignment of the surety bond to the Bank. The assignment for security of the bond did not impose any obligations on the Bank.

"'An action for implied contractual indemnity is not a claim for contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party. It is grounded upon the indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual duties.' [Citation.]" (*Bay Development, Ltd. v. Superior Court of San Diego* (1990) 50 Cal.3d 1012, 1039-1040.) The Bank would be an indemnitor owing the duty of reimbursement to RLI under the surety bond *only* if the Bank had assumed Highlands' obligations as principal under the bond. Since the assignment of the RLI bond did not transfer to the Bank any of Highlands's obligations to RLI, there is no basis for implied contractual indemnity.

14

# VII

## *Intentional Interference with Contract*

For the first time in its reply brief, RLI contends it can allege a cause of action against the Bank for intentional interference with contract. RLI contends the Bank interfered with the surety contract between RLI and Highlands by directing that the earnest money deposits be placed in an account controlled by the Bank, thus creating a risk of loss of those funds if escrow did not close, and then refusing to withdraw its lien on the condominiums, thus preventing escrow from closing.

"Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument. [Citation.]" (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Here, RLI's failure to raise this claim in its opening brief precluded the Bank from raising any arguments in opposition thereto. Accordingly, we will not consider the point.[4]

Since RLI has not shown it can amend the FACC to state a cause of action against the Bank, the trial court did not abuse its discretion in sustaining the Bank's demurrer to the SACC without leave to amend.[5]

---

[4] We note that RLI's theory of intentional interference with contract, in placing all the blame for loss of the earnest money deposits on the Bank, ignores that the loss was caused by Highlands's financial problems and default on the construction loan. RLI does not propose an amendment to the FACC that alleges that the Bank caused these financial problems or is otherwise responsible for them.

[5] Given this conclusion, it is unnecessary to address RLI's claim that the trial court abused its discretion in denying RLI's motion for reconsideration, or the Bank's argument that Civil Code section 3434 prohibits the Bank's liability in this case.

## DISPOSITION

The judgment is affirmed.  The Bank shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                          DUARTE              , J.


We concur:


          NICHOLSON        , Acting P. J.


          HULL              , J.