[No. F047649. Fifth Dist. June 29, 2006.]

JOSE MENDOZA, Plaintiff and Appellant, v.
CONTINENTAL SALES COMPANY et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C., III.D., IV., and V. of Discussion.

## COUNSEL

Law Offices of M. Irene Daniel and M. Irene Daniel for Plaintiff and Appellant.

Rynn & Janowsky and Lewis P. Janowsky for Defendants and Respondents.

## OPINION

**DAWSON, J.**—Appellant is a grower who used a commission merchant to market his pomegranate crop. The respondents are various businesses that obtained the pomegranate crop in transactions with the commission merchant. Appellant sued respondents alleging that they obtained the crop on a reconsignment basis, sold it, provided false or misleading documents about those sales, and kept money that should have been remitted to appellant. Respondents moved for judgment on the pleadings on the ground that they had no privity of contract with appellant and therefore his claims must fail. The superior court agreed and granted respondents' motion without leave to amend.

Appellant argues that the common law and statutory duties imposed on commission merchants apply to respondents based on their status as reconsignees. Respondents contend there were no reconsignments and that all of their transactions with the commission merchant were sales.

We conclude that the complaint, although ambiguous, does sufficiently allege that respondents were reconsignees and that the commission merchant was authorized by appellant to enter into reconsignment relationships. We further conclude that the complaint presents the legal theory that the commission merchant was appellant's agent and respondents were subagents engaged

by the commission merchant. California law recognizes that (1) commission merchants are agents, (2) an agent owes fiduciary duties to his or her principal, and (3) a subagent owes the principal the same duties as the agent where the agent was authorized by the principal to retain subagents. Applying these rules of law to the facts alleged in the complaint, appellant has presented the legal theory that respondents were appellant's subagents and, as such, owed him a fiduciary duty. The appellant's other allegations, when considered with this fiduciary duty, are sufficient to state claims for conversion, breach of fiduciary duty, accounting, and negligence.

As to appellant's claims for breach of contract, breach of the covenant of good faith and fair dealing, and fraud, we conclude the allegations are insufficient to state those claims, but direct that the trial court grant leave to amend.

Accordingly, we reverse the judgment and remand for further proceedings. We publish this opinion because, based on the rules of law applicable to subagents, it extends the ruling in *Fischer v. Machado* (1996) 50 Cal.App.4th 1069 [58 Cal.Rptr.2d 213] (*Fischer*). In *Fischer*, the court held that a commission merchant can be liable for the conversion of proceeds from the sale of farm products that he sells as an agent for the farmer. Here, we hold that a subagent, like an agent, may be liable for converting sale proceeds.

## FACTS AND PROCEEDINGS[1]

Appellant Jose Mendoza is engaged in the business of growing farm products, does business under the fictitious name of San Joaquin Labor Service, and has his principal place of business in Lindsay, California.

Sometime in 2001, appellant entered into an oral agreement with Ken Britten, who does business as Alta Peak Packing Company (Britten),[2] to market appellant's pomegranates through normal channels at the highest cash price and best terms available in exchange for payment of 8.5 percent of the gross sales price plus reimbursement for actual packing and cooling charges.

Appellant did not know that Britten was not licensed as a commission merchant or that he hired John Rast, doing business as Rast Produce

---

[1] The facts are distilled from the allegations of the complaint.

[2] Britten was named as a defendant in the complaint, but appellant states that the claims against him have been settled.

Company,[3] to assume primary responsibility for selling the 2001 pomegranate crop and agreed to pay Rast 8.5 percent of the sales price and any costs and expenses actually incurred.

Appellant learned of Rast's involvement when he received reports of what purported to be a summary of the sales, receipts, and disposition of all of appellant's produce and the money received. Appellant alleges that Rast, among other things, sold his 2001 pomegranate crop on unauthorized terms, made secret profits, failed to fully account for the proceeds, and made materially false statements to appellant about the sale and disposition of the crop.

Unaware of Rast's conduct regarding the 2001 crop, appellant entered a written contract with Rast under which Rast agreed to function as a commission merchant and market appellant's 2002 pomegranate harvest (Marketing Agreement). A copy of the 10-page Marketing Agreement was attached as an exhibit to the complaint.

Appellant completed the cultivation and harvest of the 2002 pomegranate crop and delivered it to Rast. Subsequently, appellant received information and documents from Rast that reported the packout, grades, quality, weights, sales, proceeds, and expenses of sale. In reviewing this information and comparing it with similar reports for the 2001 crop, appellant noted some sales appeared irregular and others suggested a pattern of below-market pricing. In some instances, appellant suffered a loss on the sales and was billed $1.33 per case by Rast when the current market price was approximately $10 to $15 per case.

Appellant alleges that Rast "habitually shipped [appellant]'s product on an 'open price' basis to 'buyers' in various markets. Under the guise of a 'sale,' [Rast] re-consigned the product to purported 'buyers' who would resell the product at a [sic] much higher profits before a final price for [appellant]'s product was negotiated with [R]ast."

Appellant alleges that the "re-consignees and purported 'buyers' included" (1) Continental Sales Company, (2) CDS Distributing, Inc., (3) Custom Produce Sales, (4) Four Seasons Produce, Inc., (5) Jacobs, Malcolm & Burtt,

---

[3] In November 2002, Rast incorporated his business under the name Rast Produce Co., Inc. Appellant has named John Rast, Rast Produce Company, and Rast Produce Co., Inc. as defendants (collectively, Rast), but they did not join in the motion for judgment on the pleadings and are not parties to this appeal. The distinction between John Rast and the corporation is not significant for purposes of this appeal.

Inc., (6) JMB International, Inc., (7) M. Levin & Company, Inc., (8) Morita Produce Co. & Nuthouse, (9) River City Produce Co., Inc., (10) Andrighetto Produce, Inc., doing business as Shasta Produce, (11) Shapiro-Gilman-Shandler Co., (12) Val-Pro, Inc., doing business as Valley Fruit & Vegetable Co., and (13) Royal Banana Company, Inc. (respondents).

Appellant alleges that respondents, "by accepting [his] fruit for sale without first contracting for its purchase at a designated price, became commission merchants with the attendant common law and statutory duties." Appellant alleges that Rast and respondents (1) used false and misleading invoices, reports, and other documentation to reduce and conceal the sums owing to him, (2) fraudulently sold his crop for less than prevailing market price in self-dealing or transactions with affiliates, (3) refused to provide documentation regarding sales of his crop as required by statute, and (4) made unauthorized charges against his account without providing him notice or obtaining his consent. Appellant alleges these acts breach contractual, common law, and statutory duties. The statutory provisions referenced are contained in chapter 7 (titled Produce Dealers) of division 20 of the California Food and Agricultural Code.

Appellant alleges that, although the documentation is incomplete, he believes that he was damaged by the acts and omissions of Rast and respondents in an amount in excess of $50,000.

Based on information and belief, appellant also alleges that Rast and respondents were engaged in a common scheme to steal his property, convert it to their own use, or to sell it at less than fair market value in order to advance their economic interests at his expense, and to conceal their thefts and lack of diligence by a pattern of false, fraudulent, and misleading documents.

Appellant filed his complaint on October 30, 2003, and set forth claims for (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) negligence, (4) fraud and deceit, (5) conversion, (6) accounting, and (7) breach of fiduciary duties.

On July 21, 2004, respondents filed a motion for judgment on the pleadings, which asserted (1) the complaint in its entirety did not state facts sufficient to constitute a cause of action against them, and (2) each of the seven claims in the complaint, considered individually, failed to state a cause of action against them.

On August 23, 2004, the superior court filed an order granting the motion without leave to amend stating that respondents "are entitled to judgment on the pleadings without leave to amend as a matter of law because said [respondents] were not parties to the contract, and any duties that they owed were owed to [Rast]." On September 27, 2004, a judgment on the pleadings without leave to amend against appellant and a judgment for costs against appellant were filed. Appellant subsequently filed a notice of appeal.

## DISCUSSION

### I. *Motion for Judgment on the Pleadings—Standard of Review*

A threshold issue in this appeal concerns how the allegations in the complaint should be interpreted. As a result, the rules of law governing the review of a complaint in the context of a motion for judgment on the pleadings will play a crucial role in the outcome of this appeal.

#### A. *Stating a Cognizable Claim*

A motion for judgment on the pleadings may be made on the ground that the complaint fails to state facts sufficient to constitute a legally cognizable claim. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii); *Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388].) In reviewing the grant of such a motion, an appellate court applies the same rules that govern review of the sustaining of a general demurrer. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) Thus, "we are not bound by the determination of the trial court, but are required to render our independent judgment on whether a cause of action has been stated." (*Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].)

In a case involving a motion for judgment on the pleadings, our Supreme Court has said: "[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice. [Citations.] 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.' [Citation.] 'Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.' [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232 [44 Cal.Rptr.2d 352, 900 P.2d 601].)

##### 1. *Inferences resulting from liberal construction*

The mandate that allegations be liberally construed is important in this appeal because of the inferences to be drawn as a result of a liberal

construction. When liberally construing allegations, a reviewing court also assumes the truth of all facts that may be inferred reasonably from (1) the facts pled, (2) the facts contained in exhibits to the complaint, and (3) the facts that are judicially noticed. (See *Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305 [35 Cal.Rptr.3d 453] [inferences drawn in reviewing a demurrer]; Code Civ. Proc., § 452 [liberal construction of allegations].)

### 2. *Alternate theories and inconsistent pleading*

■ When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations. (*Adams v. Paul* (1995) 11 Cal.4th 583, 593 [46 Cal.Rptr.2d 594, 904 P.2d 1205]; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690–691 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [factually and legally inconsistent theories allowed].)

### B. *Leave to Amend*

■ Whether a motion for judgment on the pleadings should be granted with or without leave to amend depends on "whether there is a reasonable possibility that the defect can be cured by amendment . . . ." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] [stating rule applied to a general demurrer].) When a cure is a reasonable possibility, the trial court abuses its discretion by not granting leave to amend and a reviewing court must reverse. (*Ibid.*) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

## II. *Reconsignment and the Theory That Respondents Are Subagents*

### A. *Allegations of Reconsignment*

An issue discussed at oral argument was whether the transactions involving respondents should be regarded as reconsignments or sales of the pomegranates.

Paragraph 23 of the complaint alleged that Rast "habitually shipped [appellant]'s product on an 'open price' basis to 'buyers' in various markets." Based on this allegation, respondents asserted that they actually purchased the pomegranates on open price terms.[4] Paragraph 23 further alleges, however, that "[u]nder the guise of a 'sale,' [Rast] re-consigned the product to

---

[4] Counsel for respondents argued that an "open price" transaction is a sale and not a consignment and supported this argument by reference to the federal Perishable Agricultural Commodities Act, title 7 United States Code section 499a et seq., and related regulations. (7 C.F.R. § 46.43(cc) (2006) [term "price arrival" defined].)

purported 'buyers' who would resell the product at . . . much higher profits before a final price . . . was negotiated with [Rast]." Also, paragraph 24 of the complaint refers to respondents as the "re-consignees and purported 'buyers' . . . ."

During oral argument, counsel for respondents described the allegations that characterized the transactions between Rast and respondents as ambiguous. Generally, "[a]mbiguous means 'susceptible to more than one reasonable interpretation.' [Citation.]" (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495 [35 Cal.Rptr.3d 596].) We agree that the allegations are ambiguous in the sense that they could be construed to mean that the transactions were either sales or consignments.

We need not and, based on the principle that a party may plead alternative theories that are inconsistent with one another, cannot conclude that the complaint stated one theory to the exclusion of the other. Rather, we conclude that the allegations in the complaint about Rast's transactions with respondents are sufficient to present both a reconsignment theory and an open price sales theory.[5]

Accordingly, we reject respondents' argument that they "were in fact 'buyers' under [the Perishable Agricultural Commodities Act]." At the pleading stage of this action, we cannot make a final determination that all of the transactions were, in fact, sales and not reconsignments.

Next, we consider whether the factual theory of reconsignment provides a basis for any cognizable claims.

B. *The Duties Owed by Reconsignees*

Appellant contends the respondents owed him the same duties as Rast owed to him because, as entities that obtained control over the pomegranate crop on a reconsignment basis, they become subagents of Rast, the original commission merchant, with the same duties to the grower.

1. *Principles of law applicable to subagents*

In California, the principles of law applicable to subagents are set forth in statute and case law. Civil Code section 2349 addresses the creation of the relationship of subagent and principal by stating, "An agent . . . can delegate his powers to another person . . . [¶] . . . [¶] [w]hen such

---

[5] Because there were many transactions, it also is possible that some transactions were sales and some were reconsignments.

delegation is specially authorized by the principal." Civil Code section 2351 states that a "sub-agent, lawfully appointed, represents the principal in like manner with the original agent . . . ." Based on these statutory provisions and on principles of common law set forth in the Restatement Second of Agency, the Fourth Appellate District stated, "If an agent is authorized by the principal to employ a subagent, the subagent owes the same duties to the principal as does the agent." (*Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 446, fn. 3 [98 Cal.Rptr.2d 193]; see Rest.2d Agency, §§ 5, 428.)

### 2. *Reconsignees as subagents*

The complaint alleges that Rast acted as a commission merchant in marketing appellant's crop and that the respondents that dealt with Rast were "re-consignees" and, as such, "became commission merchants with the attendant common law and statutory duties."

Paragraph 25 of the Marketing Agreement stated that Rast was authorized to "re-consign crops to other commission merchants" and to "employ the services of brokers [and] other agents . . . ." Paragraph 10 of the Marketing Agreement referred to Rast's right to sell the crops "on a consignment or reconsignment basis, or price after sale . . . ." Paragraph 12.C of the Marketing Agreement stated that Rast was responsible for marketing and selling the crop, that Rast had the exclusive right to make all collections of and receive all payment for the crop sold by it, and that if Rast "fails to take [that] action, [appellant] reserves the right to do the same."

The allegations in the complaint and the provisions of the Marketing Agreement concerning reconsignment adequately support, and thus include, inferences that (1) Rast was appellant's agent for purposes of marketing the crop (see *Fischer, supra*, 50 Cal.App.4th at p. 1072; Food & Agr. Code, § 56105, subd. (d)); (2) respondents were subagents engaged by Rast; and (3) Rast engaged the respondents as subagents pursuant to authority granted to him by the Marketing Agreement.

### III. *Application of Subagency Theory to Claims Alleged*

#### A. *Conversion*

Appellant's position on conversion is simple: "He has alleged that in a number of transactions, [respondents] sold his fruit for a higher price than was reported and kept the profit. [Respondents'] retention of this profit is a conversion."

In *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066 [80 Cal.Rptr.2d 704], the First Appellate District summarized the tort of conversion as follows: "Conversion is the wrongful exercise of dominion over the

property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [Citations.]"

In *Fischer, supra,* 50 Cal.App.4th 1069, the court held that a commission merchant that sold farm products as an agent for a farmer and did not turn over the definite sum received by it on the farmer's account was liable for conversion. Appellant argues this holding should be extended to situations (1) where the defendants are regarded as commission merchants in relation to the plaintiff even though they did not deal directly with the plaintiff or (2) where the defendants are subagents of the original commission merchant.

Based on the principle that a subagent owes the same duties to a principal as does the agent, we conclude that the holding in *Fischer* should be extended to the situation presented in this appeal. Therefore, a commission merchant who sells pomegranates as a subagent for a grower and keeps some of the proceeds received for the farmer's account from that sale is liable for conversion. Accordingly, appellant's fifth cause of action for conversion states a cognizable legal claim.

B. *Breach of Fiduciary Duty*

The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 483 [80 Cal.Rptr.2d 329], citing *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [3 Cal.Rptr.2d 236].)

"An agency relationship is a fiduciary one, obliging the agent to act in the interest of the principal. [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Because "the subagent owes the same duties to the principal as does the agent" (*Streit v. Covington & Crowe, supra,* 82 Cal.App.4th at p. 446, fn. 3), it follows that the relationship between subagent and principal is a fiduciary one. Accordingly, appellant has adequately alleged a fiduciary relationship. The allegation in paragraph 25 of the complaint that "[respondents] breached

their duties by, *inter alia*, using false or misleading invoices, reports, and other documentation to reduce and conceal the sums owing to [appellant] while selling to others for prices higher than those reported to [appellant]" adequately alleges a breach of the fiduciary duty.[6] Further, the sums allegedly owing to appellant but concealed by respondents are sufficient to constitute damage caused by the alleged breach of fiduciary duty.

In summary, appellant has adequately alleged all three elements that constitute a claim for breach of fiduciary duty.[7]

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment filed on September 27, 2004, is reversed and the matter is remanded to the superior court with directions (1) to vacate its order granting the motion for judgment on the pleadings without leave to amend; and (2) to enter an order (a) denying the motion as it relates to the complaint in its

---

[6] Paragraph 25 is one of the paragraphs of the complaint incorporated by reference into appellant's seventh cause of action concerning breaches of fiduciary duties.

[7] Because a claim against respondents has been stated for breach of fiduciary duty and conversion, we do not separately address whether the allegations in paragraph 29 of the complaint that respondents engaged in a common scheme are sufficient to keep respondents in this lawsuit based on the legal theory of civil conspiracy. An independent civil wrong is required for the claim of civil conspiracy, the elements of which "are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062 [39 Cal.Rptr.3d 516, 128 P.3d 713]; see *Black v. Sullivan* (1975) 48 Cal.App.3d 557, 566–569 [122 Cal.Rptr. 119] [Ct. App., 5th Dist. denies summary adjudication of civil conspiracy claim].) Because civil conspiracy is not an independent tort, its only significance is that each member of the conspiracy may be held directly responsible as a joint tortfeasor, regardless of actual participation in the tortious act itself. (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1141, fn. 30 [15 Cal.Rptr.3d 118].)

*See footnote, *ante*, page 1395.

entirety; (b) denying the motion as it relates to the third (negligence), fifth (conversion), sixth (accounting) and seventh (breach of fiduciary duties) causes of action; and (c) granting the motion with leave to amend as to the first (breach of contract), second (covenant of good faith and fair dealing), and fourth (fraud and deceit) cause of actions.

Appellant shall recover his costs on appeal.

Wiseman, Acting P. J., and Levy, J., concurred.