Filed 11/6/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRETT A. FIORINI, | F067046 |
| Plaintiff and Appellant, | (Super. Ct. No. 11CECG03802) |
| v. | |
| CITY BREWING COMPANY, LLC, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County. Kristi Culver Kapetan, Judge.

William L. Schmidt; Bell & Roper, Michael M. Bell, Dale A. Scott; Donald Van Dingenen; Schweitzer & Davidian and Eric H. Schweitzer for Plaintiff and Appellant.

Gordon & Rees, Michael J. Pietrykowski and Don Willenburg for Defendant and Respondent.

-ooOoo-

Ron A. Fiorini (Fiorini), a 23-year-old college student at Fresno Pacific University, was shot to death by police on October 5, 2010, after drinking two 23.5-ounce cans of Four Loko.

Fiorini's father, Brett Fiorini (plaintiff), sued City Brewing Company, LLC (City Brewing), the company that brewed, bottled, and labeled Four Loko, for negligence and strict liability. He alleged a single can of Four Loko contained as much alcohol as five to six 12-ounce cans of beer and as much caffeine as approximately four cans of Coca-Cola. He also alleged that combining alcohol, a depressant, with caffeine and other stimulants created a product that had unreasonably dangerous propensities because it masked the intoxicating effect of the alcohol and increased the risk of violent and other high-risk behavior.

City Brewing moved for judgment on the pleadings, contending that the proximate cause of an alcohol-related injury was the consumption of the intoxicating beverage, not the manufacture and sale of the beverage. The trial court granted the motion, concluding City Brewing was protected by the civil immunity in California's dram shop statutes[1] because (1) Four Loko was fit for beverage purposes, and (2) City Brewing furnished the beverage to Fiorini.

We must determine whether the civil immunity provided by California's dram shop statutes protects the manufacturer of Four Loko from liability for injuries to consumers. The immunity applies to persons who furnish alcoholic beverages to the individuals who drink them. Prior cases have interpreted "furnish" to require the defendant to have some control of the alcohol and to take an affirmative step to supply it to the consumer. Here, the complaint does not allege City Brewing (1) exercised any

---

[1]Those statutes include Business and Professions Code sections 25602, 25602.1, 25602.2, and 25602.3 and Civil Code section 1714, subdivisions (b) and (c). All further statutory references are to the Business and Professions Code unless otherwise stated.

control over the cans of Four Loko after they were delivered to a regional distributor or (2) took an affirmative step to supply the Four Loko to Fiorini.  Therefore, we conclude City Brewing did not "furnish" the beverage to Fiorini and, therefore, the civil immunity in California's dram shop statutes do not extend to City Brewing.

In addition, judgment on the pleadings cannot be upheld based on the statutory immunity that bars product liability claims for certain inherently unsafe common consumer products.  (Civ. Code, § 1714. 45, subd. (a).)  That statute lists alcohol as such a product, but plaintiff has alleged Four Loko was unreasonably dangerous due to the combination of high levels of alcohol and stimulants and the risk posed by stimulants that mask the intoxicating effect of the alcohol.  The allegations about the interactive effect of Four Loko's ingredients preclude us from finding, as a matter of law, that Four Loko's combination of alcohol and stimulants constitutes a "common consumer product" within the meaning of Civil Code section 1714.45, subdivision (a)(2).

Therefore, the judgment must be reversed and the matter remanded to the trial court for further proceedings.

## FACTUAL SUMMARY

### *The Defendants*

Defendant Phusion Projects, LLC (Phusion), is a limited liability company with its principal office in Chicago, Illinois.  It is an alcoholic beverage company founded in 2005 by Jaisen Freeman, Chris Hunter and Jeff Wright, who currently act as Phusion's managing directors.  Phusion invented and owned the caffeinated, alcoholic beverage line known as Four Loko and was in the business of formulating, marketing, labeling, distributing and selling Four Loko.

Defendant City Brewing is a Wisconsin limited liability company with its principal office in La Crosse, Wisconsin.  It brewed, bottled, and labeled Four Loko for Phusion and its business also included distributing and selling Four Loko.

Defendant Donaghy Sales, LLC (Donaghy Sales), is a California limited liability company with its principal office in Fresno, California. As part of its business, Donaghy Sales sold and distributed Four Loko.

Defendant Sukhjit S. Sangha is an individual doing business as SSS Chevron and owns and operates a convenience store located on Butler Avenue in Fresno, California. The SSS Chevron convenience store is where Fiorini purchased two cans of Four Loko, beer, and sandwiches on the day he died.

City Brewing is the only defendant remaining in this appeal. The other defendants have been dismissed, either voluntarily or involuntarily.[2]

### The Beverage

Plaintiff's complaint alleged the following concerning Four Loko.

Four Loko was sold in the United States in 23.5-ounce nonresealable cans, which was approximately twice the size of the standard 12-ounce can of soda or beer. It contained 12 percent alcohol by volume in the version sold in California; this amount of alcohol was equivalent to five or six 12-ounce cans of beer.[3] One can also contained as

---

[2]Donaghy Sales and Phusion were dismissed from this appeal because plaintiff failed to file a timely notice of appeal as to them.

[3]In the context of beverages, the term "alcohol" usually means ethanol (also referred to as ethyl alcohol or $C_2H_5OH$). (See § 23003 [alcohol defined as ethyl alcohol].) In other contexts, "alcohol" is defined generally as an organic compound containing one or more hydroxyl groups. (*Glaxo Wellcome v. Pharmadyne Corp.* (D.Md. 1998) 32 F.Supp.2d 265, 290, fn. 27.) A hydroxyl group consists of an oxygen atom bonded to a hydrogen atom, which appears as OH in the chemical formula of the compound. (*Ibid.*)

Other common alcohols are methyl alcohol (methanol, wood alcohol or $CH_3OH$), isopropyl alcohol (rubbing alcohol or $C_3H_7OH$) and butyl alcohol (butanol or $C_4H_9OH$). (*State v. Lemler* (2009) 2009 S.D. 86 [774 N.W.2d 272, 278].) Methanol is poisonous to humans and can result in death or blindness. (See *People v. Mattison* (1971) 4 Cal.3d 177, 181; *Commonwealth v. Feinberg* (1969) 43 Pa. 558 [253 A.2d 636, 643, fn. 5] [defendant sold industrial Sterno, which contained methanol, to skid row alcoholics].)

4.

much caffeine as two cups of coffee or three to four cans of Coca-Cola. It also contained the stimulants guarana, taurine, and wormwood. Wormwood is the active ingredient in absinthe. Four Loko also contained sugar, natural and artificial flavors, and carbonation. As formulated in October 2010, consumption of a single can of Four Loko would cause a 225-pound man to achieve unlawful intoxication as defined by California's traffic laws.

The marketing and sales efforts for Four Loko targeted underage and college-aged consumers and promoted overconsumption by (1) using colorful, flashy labels that mimicked those of popular nonalcoholic energy beverages, (2) using flavors, such as watermelon, grape, blue raspberry, and fruit punch, and (3) pricing it at under $3 per can. Also, Four Loko was sold primarily in convenience stores where clerks were less likely to verify a customer's age or might fail to recognize it as containing alcohol.

Four Loko acquired nicknames because of its potency and disorienting effects, including "liquid cocaine," "liquid crack," and "blackout in a can."

Plaintiff described Four Loko as the quintessential alcoholic energy drink and alleged such drinks posed health risks by masking intoxication.

***Combining Alcohol, Caffeine, and Other Stimulants***

Plaintiff's complaint referred to studies and articles that addressed the effects of ingesting alcohol, caffeine, and other stimulants together.

One study found that when the ingestion of alcohol alone was compared to the ingestion of alcohol and an energy drink, the subject's perception of impaired motor coordination was reduced significantly without an objective reduction in the deficits caused by alcohol on objective motor coordination and visual reaction time. (Ferreira et al., *Effects of Energy Drink Ingestion on Alcohol Intoxication* (Apr. 2006) vol. 30, No. 4, Alcoholism: Clinical and Experimental Research, p. 598 (hereafter Ferreira).) Ferreira stated (1) there was little scientific evidence on the interaction of alcohol and the substances in energy drinks; (2) "researchers have some knowledge about the interactions

between caffeine and alcohol"; and (3) "there are no studies discussing the interactions of alcohol and taurine on the cognitive performance in humans."[4]  (*Id.* at pp. 598, 599.)

Another article reported that students who mix alcohol with energy drinks have a significantly higher prevalence of alcohol-related consequences, including being taken advantage of sexually, taking advantage of another sexually, riding with an intoxicated driver, being physically injured, and requiring medical treatment.  (O'Brien et al., *Caffeinated Cocktails:  Energy Drink Consumption, High-risk Drinking, and Alcohol-related Consequences among College Students* (May 2008) vol. 15, No. 5, Academic Emergency Medicine, p. 453.)  O'Brien stated that the effects of caffeine and the other ingredients "are incompletely understood."  (*Ibid.*)

A third article stated that bar patrons who had consumed alcohol mixed with energy drinks were at a three-fold increased risk of leaving the bar highly intoxicated and a four-fold increased risk of intending to drive upon leaving the bar district.  (Thombs et al., *Event-level analyses of energy drink consumption and alcohol intoxication in bar patrons* (Apr. 2010) vol. 35, No. 4, Addictive Behavior, p. 325.)

The complaint also described actions by the FDA related to alcoholic beverages that contained caffeine and other stimulants.  After obtaining information from Phusion, the FDA sent Phusion a letter dated November 17, 2010, stating that caffeine, as used in Four Loko, was an unsafe food additive and, therefore, Four Loko was adulterated under the Food, Drug, and Cosmetic Act (21 U.S.C. § 342(a)(2)(C)).  Similarly, the Federal Trade Commission issued a letter dated November 17, 2010, advising Phusion that "its marketing and sale of Four Loko and Four Maxed may constitute an unfair or deceptive

---

[4]The article describes taurine as one of the most abundant amino acids in the central nervous system and states it "plays an important role in physiological processes such as osmoregulation, neuroprotection, and neuromodulation."  (Ferreira, *supra*, at p. 599).

act or practice in violation of the Federal Trade Commission Act, 15 U.S.C. § 45." The letter also stated:

> "We are aware of a number of recent incidents suggesting that alcohol containing added caffeine may present unusual risks to health and safety. These incidents suggest that consumers, particularly young adults, may not fully appreciate the potential effects of consuming caffeinated alcohol beverages such as Four Loko and Four Maxed.

> "We have further been advised that the [FDA] has warned you that caffeine, as used in your product, Four Loko, is an 'unsafe food additive' under the Federal Food, Drug, and Cosmetic Act. As a result, this product is deemed adulterated." (Fns. omitted.)

On November 16, 2010, in anticipation of the foregoing position of federal regulators, Phusion announced it would reformulate Four Loko and remove caffeine.

### The Death of Fiorini

Plaintiff's complaint alleged the following concerning the death of Fiorini.

Fiorini was born in September 1987 and died on October 5, 2010. On that date, at approximately 2:00 p.m., Fiorini met with two friends at a gym in Fresno and lifted weights. According to Fiorini's friends, his demeanor at the time was unremarkable and normal.

Fiorini and his friends left the gym and drove to the SSS Chevron convenience store. Fiorini purchased two cans of Four Loko, beer, and sandwiches.

After leaving the convenience store, Fiorini drove to his friends' apartment where he drank the two cans of Four Loko and a quantity of beer. Fiorini then began to act in an irritated, agitated and disoriented manner—a manner that his friends had not seen previously.

At approximately 5:00 p.m., Fiorini left his friends' apartment and drove to a house he rented with two others. After arriving home, he exhibited unusual behavior and made statements about an impending riot and also stated "they're coming to get us." Thereafter, Fiorini became extremely disoriented, excited, agitated, and paranoid.

At some point, Fiorini located his shotgun, went into the backyard and began firing at targets leaning against a fence. While in the backyard, Fiorini again told a housemate to get in the house as "they" were coming to get them. His housemates then called 911 and requested police assistance.

After police officers arrived at the scene, Fiorini came out onto the front porch of the house with the shotgun resting on his shoulder. The police officers opened fire, shooting him eight times. Fiorini died instantly.

Ordinarily, the amount of alcohol Fiorini consumed that day would have caused him to lose consciousness or to act in a subdued manner. Instead, because of Four Loko's high caffeine content and the presence of other stimulants, Fiorini remained awake and in an extremely disoriented, agitated, and paranoid state of mind.

### PROCEDURAL SUMMARY

In November 2011, plaintiff filed a complaint for damages against City Brewing and the three other defendants.

Plaintiff's negligence cause of action alleged City Brewing owed a duty of reasonable care to the public to (1) provide Four Loko free of defects and dangers and (2) adequately warn of dangers and risks known to City Brewing. Plaintiff also alleged City Brewing breached this duty as it (1) labeled, distributed, and sold Four Loko in a manner so as to make it unsafe and inherently dangerous for consumption by the intended, foreseeable consumer and (2) misled and inadequately warned consumers as to Four Loko's contents, potency, and dangerousness. Plaintiff also alleged City Brewing and the other defendants were aware of the high probability that injury would result from Four Loko's dangerous propensities.

Plaintiff's strict liability cause of action alleged (1) Four Loko was defective and unreasonably dangerous; (2) consumers were inadequately warned as to Four Loko's contents, potency, and dangerousness; (3) City Brewing was in the chain of distribution from Phusion to Fiorini; and (4) but for the defects and inherent dangers in Four Loko

8.

and related failure to warn, Fiorini would not have achieved the level of intoxication, disorientation, and agitation he experienced on October 5, 2010.

In response to the complaint, City Brewing filed an answer, while Phusion and Donaghy Sales filed demurrers.

The trial court sustained the demurrers of Phusion and Donaghy Sales without leave to amend and stated "the sweeping immunity of Business and Professions Code section 25602 applies to bar Plaintiffs' [*sic*] action."

This ruling prompted City Brewing to file a motion for judgment on the pleadings. The motion echoed the demurrers by arguing plaintiff's claim was "barred by immunity, afforded by statute and common law, for those who sell or furnish an alcoholic beverage from liability for injuries to (or by) an intoxicated consumer of the beverages. (§ 25602; Civ. Code, § 1714, subd. (b).)" Plaintiff opposed the motion, arguing section 25602 did not apply.

The trial court granted the motion and on February 5, 2013, the trial court entered a judgment in favor of City Brewing that stated plaintiff's claims were dismissed with prejudice.

## DISCUSSION

### I.      Standard of Review

Code of Civil Procedure section 438 authorizes a defendant to move for judgment on the pleadings on the ground that the complaint "does not state facts sufficient to constitute a cause of action against that defendant." (*Id.,* subd. (c)(1)(B)(ii).)

When a superior court grants a motion for judgment on the pleadings, the appellate court accepts as true the factual allegations made by the plaintiff's complaint, gives those allegations a liberal construction, and determines whether the facts alleged are sufficient to constitute a cause of action under any legal theory. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 516; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226,

9.

1232.)  The appellate court's determination is based on an independent examination of the pleadings.  (*Gerawan Farming,* at p. 516; *Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [appellate court renders an independent judgment on whether a cause of action has been stated].)[5]

In this appeal, the ability of plaintiff to allege a cause of action turns on whether City Brewing is immune under California's dram shop statutes.  (§ 25602; Civ. Code, §§ 1714, subd. (b), 1714.45, subd. (a).)

When interpreting a statutory provision, appellate courts conduct a de novo review.  (*Community Development Com. v. County of Ventura* (2007) 152 Cal.App.4th 1470, 1482.)  Our primary task in interpreting a statute is to ascertain the intent of the Legislature so as to give effect to the purpose of the law.  (*Landeros v. Torres* (2012) 206 Cal.App.4th 398, 415.)  "We are guided primarily by the words of the statute, giving them their ordinary meaning, and look to outside sources only if the statute is ambiguous."  (*Ibid*.)

## II.     The 1978 Amendments

### A.      *Background*

"Prior to 1971, California courts uniformly held that the *consumption* of alcoholic beverages, rather than the *serving* of alcoholic beverages, was the proximate cause of injuries resulting from the intoxication of the imbiber."  (Comment, *Social Host Liability for Furnishing Alcohol:  A Legal Hangover?* (1979) 10 Pac. L.J. 95, 96; see *Cole v. Rush* (1955) 45 Cal.2d 345.)

In *Vesely v. Sager* (1971) 5 Cal.3d 153, a unanimous California Supreme Court rejected the traditional approach to proximate cause, stating that "this rule is patently unsound and totally inconsistent with the principles of proximate cause established in

---

[5]These are the same rules that an appellate court applies when reviewing an order sustaining a general demurrer.  (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.)

other areas of negligence law." (*Id*. at p. 166.) The court concluded that a tavern keeper owed a duty of care to the public based on the version of section 25602 then in effect, which stated that every person who sold any alcoholic beverage to any obviously intoxicated person was guilty of a misdemeanor. (*Vesely,* at p. 165.)

About five years later, the California Supreme Court extended this duty of care to out-of-state businesses that sell alcoholic beverages to intoxicated patrons who subsequently have an automobile accident in California and inflict injuries upon a California resident. (*Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313 [judgment reversed and trial court directed to overrule the demurrer].)

The next extension of the duty of care occurred in *Coulter v. Superior Court* (1978) 21 Cal.3d 144 when the court considered "whether the noncommercial suppliers of alcoholic beverages may be liable to third persons injured by reason of the intoxication of the consumer of those beverages." (*Id*. at p. 147.) The court extended the duty of care to social hosts, stating that the "danger of ultimate harm is as equally foreseeable to the reasonably perceptive host as to the bartender. The danger and risk to the potential victim on the highway is equally as great, regardless of the source of the liquor." (*Id*. at p. 153.)

Less than five months after *Coulter* was decided, the Legislature adopted Senate Bills Nos. 1645 and 1175 (1977-1978 Reg. Sess.) (hereafter Senate Bills 1645 and 1175),[6] which were chaptered by the Secretary of State on September 20, 1978. (Stats. 1978, ch. 929, §§ 1, 2, pp. 2903-2904; *id.,* ch. 930, §§ 1-3, pp. 2904-2905.) This legislation reversed the judicial extension of civil liability for the furnishing of alcohol.

_____

[6]Senate Bill 1175 added sections 25602.1, 25602.2, and 25602.3 to the Business and Professions Code. Section 25602.1 contains an exception to the general prohibition of civil liability for injuries arising from the furnishing of alcohol. A *licensee* (i.e., a commercial vendor, not a social host) may be liable for injuries resulting from furnishing alcohol to an obviously intoxicated *minor*. (*Ibid.*)

11.

### B. Text of Senate Bill 1645

Senate Bill 1645 amended section 25602 by designating its existing provision as subdivision (a) and adding subdivisions (b) and (c). The new subdivisions stated persons who committed the misdemeanor defined in subdivision (a) had no civil liability and declared how section 25602 "shall be interpreted." The current version of section 25602 provides:

> "(a) Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor.

> "(b) No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage.

> "(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Vesely …*, *Bernhard …*, and *Coulter …* be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." (Italics added.)

In addition, Senate Bill 1645 amended Civil Code section 1714 to address the *Vesely-Bernhard-Coulter* decisions with much broader language than used in subdivision (c) of Business and Professions Code section 25602. Civil Code section 1714 now provides, in part:

> "(b) It is the intent of the Legislature to abrogate the holdings in cases such as *Vesely …*, *Bernhard …*, and *Coulter …* and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person."

12.

By enacting Senate Bill 1645, the Legislature "in essence created civil immunity for sellers and furnishers of alcohol in most situations." (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 701.) In *Strang v. Cabrol* (1984) 37 Cal.3d 720 (*Strang*), the court described the provisions added by Senate Bill 1645 as providing a "sweeping civil immunity." (*Id*. at pp. 724-725.)

## III.    Application of Section 25602 to City Brewing

### A.    *Misdemeanor and Immunity Provisions*

As background for our analysis of the scope of subdivision (c) of section 25602, we will examine whether subdivision (a) or (b) of this section applies to the factual allegations made against City Brewing.

Subdivision (a) of section 25602 states that selling, giving, or furnishing an alcoholic beverage to certain persons is a misdemeanor. Plaintiff's factual allegations against City Brewing, if accepted as true, are insufficient to establish City Brewing committed the misdemeanor for two reasons. First, the complaint's allegations do not describe Fiorini as a person who may not be given an alcoholic beverage—that is, a "habitual or common drunkard" or an "obviously intoxicated person." (*Ibid.*) Second, even if Fiorini had been such a person, City Brewing did not sell or cause the cans of Four Loko to be sold to Fiorini. Rather, the complaint alleges SSS Chevron sold the cans of Four Loko to Fiorini. Therefore, the only person or entity in the chain of supply that might have committed the misdemeanor defined by subdivision (a) of section 25602 by selling Four Loko to Fiorini was SSS Chevron—the only entity in a position to know if it was selling, giving, or furnishing Four Loko to a common drunkard or an obviously intoxicated person.

Subdivision (b) of section 25602 creates a civil immunity, but the immunity is limited to persons who have supplied an "alcoholic beverage pursuant to subdivision (a) of this section." The scope of this statutory limitation is not ambiguous. (See *Morton*

13.

*Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716 [there is no need for construction when statutory language is clear and unambiguous].) The immunity applies to protect a person who is alleged to have breached a duty to the public by committing the misdemeanor defined in subdivision (a) of section 25602. Here, City Brewing is not alleged to have committed the misdemeanor when it brewed, bottled, and labeled the cans of Four Loko eventually consumed by Fiorini. Therefore, the civil immunity provided by subdivision (b) of section 25602 does not apply to the allegations against City Brewing.

### B. *Directions About Interpretation*

The single sentence in subdivision (c) of section 25602 contains the Legislature's declaration that "this section shall be interpreted so that .…" This language, when read in context with the more direct language in subdivision (b) of Civil Code section 1714, establishes that subdivision (c) of Business and Professions Code section 25602 does not set forth an independent rule of law, but serves as a guide for how courts should interpret the substantive provisions in subdivisions (a) and (b) of section 25602. Because the misdemeanor and immunity provisions in section 25602 do not apply to the allegations against City Brewing, the declaration about how section 25602 must be interpreted has no direct application in this appeal.[7]

City Brewing—apparently recognizing that the claims against it do not fit within the terms of section 25602—contends the trial court's decision is supported by Civil Code section 1714 and we may affirm that decision on any basis presented by the record, whether or not relied upon by the trial court. City Brewing argues that Civil Code section

---

[7]This conclusion about the scope of section 25602 is not contrary to the California Supreme Court's statements in *Strang, supra,* 37 Cal.3d 720 regarding the sweeping immunity afforded by "the 1978 amendments." (*Id*. at p. 725.) Those amendments—specifically, Senate Bill 1645—revised both section 25602 and Civil Code section 1714. (*Strang,* at p. 722.)

14.

1714 was presented below because its motion for judgment on the pleading explicitly referred to that statute.

We agree with City Brewing that the potential application of Civil Code section 1714 to this case presents a theory of law that might be a basis for sustaining the trial court's decision. (See *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [a decision, correct in law, will not be disturbed on appeal merely because given for the wrong reason].) Consequently, we turn to the broader language contained in subdivision (b) of Civil Code section 1714 and examine whether that provision operates as a bar to plaintiff's claims.

## IV.    Application of Civil Code Section 1714

The version of section 1714, subdivision (b) currently in effect reinstates the common law rule that immunized from civil liability those who furnish alcoholic beverages to a person who then injured himself or herself or a third party as a result of intoxication. (*Rybicki v. Carlson* (2013) 216 Cal.App.4th 758, 762.)

The parties have raised many issues regarding the applicability of this immunity to City Brewing.[8] We will limit our discussion to the meaning of the statutory term "furnishing" and whether City Brewing furnished the cans of Four Loko to Fiorini. We conclude a beverage's manufacturer, separated from the ultimate consumer by a regional distributor and a local retail outlet, does not "furnish" the beverage to the consumer. Applying this interpretation to the allegations of the complaint, we conclude that City Brewing did not furnish the Four Loko to Fiorini and, therefore, City Brewing is not

---

[8]    For instance, we do not address (1) whether the term "alcoholic beverages" used in Civil Code section 1714, subdivision (b) has the same meaning as the definition "alcoholic beverage" set forth in Business and Professions Code section 23004; (2) if so, whether the fitness of a liquid for beverage purposes presents a question of fact or a question of law; and (3) if fitness is a question of fact, whether the record permits us to determine at the pleading stage that Four Loko was fit for beverage purposes.

protected from plaintiff's product liability claims by the civil immunity contained in Civil Code section 1714, subdivision (b).

## A.     *Contentions of the Parties*

The trial court concluded the term "furnish" logically applies to any entity in the chain of distribution that sells or otherwise transfers the beverage to the next link. City Brewing contends this interpretation is correct and, therefore, it is protected by the civil immunity in California's dram shop laws.

Plaintiff contends there are no federal or state cases that apply the civil immunity in California's dram shop laws to a products liability claim brought against the beverage's manufacturer. In plaintiff's view, the dram shop laws were not intended to protect manufacturers of defective and dangerous beverages from civil liability.

## B.     *Meaning of "Funishing"*

Civil Code section 1714, subdivision (b) contains the Legislature's statement of its intent "to abrogate the holdings in cases such as *Vesely* …, *Bernhard* …, and *Coulter* … and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of *furnishing alcoholic beverages to an intoxicated person*, namely that the *furnishing* of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." (Italics added.)

The edition of Black's Law Dictionary current at the time Civil Code section 1714, subdivision (b) was adopted[9] contains the following definition of "furnish": "To

---

[9]     In *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, the California Supreme Court stated the definition that should be consulted is not from the most recent edition of a dictionary, but from the one current when the Legislature adopted the statute in question. (*Id.* at p. 570, fn. 4; *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176.)

deliver, whether gratuitously or otherwise. [Citations.] As used in liquor laws, 'furnish' means to provide in any way, and includes giving as well as selling. [Citations.]" (Black's Law Dict. (4th rev. ed. 1968) p. 804.)

California courts have interpreted the terms "furnish" and "furnished" as requiring an affirmative act by the purported furnisher to supply the alcoholic beverage to the drinker. (*Ruiz v. Safeway, Inc.* (2012) 209 Cal.App.4th 1455, 1460 (*Ruiz*); *Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1157-1158 ["it is sufficient if, having control of the alcohol, the defendant takes some affirmative step to supply it to the drinker"].)[10]

The decision in *Ruiz* demonstrates that the term "furnishing" does not encompass the entire chain of supply. In *Ruiz*, the parents of a child killed in an automobile accident brought an action against a supermarket under California's dram shop liability law. The parents alleged the supermarket furnished beer, or caused beer to be furnished, to the driver who caused the accident when its checker sold beer to the driver's companion. (*Ruiz*, *supra*, 209 Cal.App.4th at p. 1457.) The supermarket moved for summary judgment, which the trial court granted. (*Id*. at p. 1458.) The appellate court affirmed, concluding as a matter of law that the supermarket did not furnish beer to the driver. (*Id*. at pp. 1461, 1464.)

In *Ruiz*, the driver and his companion, Spitzer, had been drinking beer and rum at a fraternity party at Sonoma State University. (*Ruiz*, *supra*, 209 Cal.App.4th at p. 1457.) After the party was broken up by police around midnight, the driver and Spitzer decided to buy beer at a nearby Safeway store. (*Ibid*.) They both went into the store and stood in the checkout line. The checker asked for identification and Spitzer provided a forged driver's license and paid for the 12-pack of beer. (*Id*. at pp. 1457-1458.) Spitzer carried

---

**10** Similar to California's affirmative act requirement, the Indiana Supreme Court interprets "furnish" to mean the supplier was the "active means" by and through which the alcohol was placed in the control and custody of the intoxicated person. (*Weida v. Dowden* (Ind. 1996) 664 N.E.2d 742, 749-750.)

17.

the beer from the store and put it in the back of the driver's car. At some point on the drive back to campus, Spitzer took a bottle from the box and gave it to the driver, who drank about half of it before the car accident that caused the death of the plaintiffs' son. (*Id*. at p. 1458.) The appellate court concluded the supermarket did not furnish the driver with beer because (1) the checker sold the beer to Spitzer and not the driver, and (2) "nothing about that sale constitutes an affirmative act directly related to [the driver], or an act that *necessarily* would have resulted in Spitzer furnishing or giving that beer to [the driver]." (*Id*. at p. 1461.)

Therefore, *Ruiz* is an example of a case where the term "furnished" was applied to exclude entities further up the chain of supply from the person who handed the beverage to the consumer.

In addition, the view that the term "furnishing" includes only transfers at the end of the chain of supply is supported by statutory text setting forth the Legislature's intent to "reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of *furnishing alcoholic beverages to an intoxicated person ….*" (Civ. Code, § 1714, subd. (b).) The phrase "to an intoxicated person" suggests the furnisher would have some way of knowing whether or not the person was intoxicated, which further suggests that a furnisher would have some control over who received the beverage. This type of awareness and control is possible for social hosts, taverns, bars, and restaurants, but not for manufacturers who are far removed from the ultimate consumer.[11]

---

[11]In *Cook v. MillerCoors, LLC* (M.D.Fla. 2012) 872 F.Supp.2d 1346, a motorcycle driver who consumed several containers of Sparks, an alcoholic energy drink, was killed in a crash and his passenger, the plaintiff, was injured. The federal district court dismissed the plaintiff's design defect and failure-to-warn claims against Spark's manufacturer. (*Id*. at pp. 1350-1352.) The court stated the issue of whether the statutory phrase "a person who sells or furnishes alcoholic beverages" included manufacturers of alcoholic products was strictly an academic question because the manufacturer could not

We thus conclude that the term "furnishing" as it appears in Civil Code section 1714, subdivision (b) requires the purported furnisher to perform an affirmative act in supplying the alcoholic beverage to the person who drank it.

### C. Application of "Furnishing" to City Brewing

The application of the definition of "furnish" to the facts of this case is relatively simple.

Plaintiff's complaint alleged (1) City Brewing brewed, bottled, and labeled the Four Loko purchased by Fiorini, (2) Donaghy Sales distributed the cans to SSS Chevron, and (3) SSS Chevron sold the Four Loko to Fiorini. Nothing in the complaint states, or provides a reasonable basis for inferring, that (1) City Brewing had any control over the cans of Four Loko after they were delivered to the Donaghy Sales or (2) City Brewing performed any affirmative act that caused the cans of Four Loko to be transferred into Fiorini's possession.[12]

Based on the facts alleged, City Brewing did not "furnish" the Four Loko to Fiorini. Thus, City Brewing's motion for judgment on the pleadings cannot be granted

---

be liable under Florida's common law rule of proximate cause—that is, the proximate cause of an alcohol-related injury is the consumption of the intoxicating beverage, not the sale of the beverage. (*Id*. at p. 1350.)

The conclusion reached by the court in *Cook* cannot be extended to the questions of California law presented in this case because of the definition California courts have given the term "furnish" and the narrower scope of California's common law rule regarding the proximate cause of "injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person …." (Civ. Code, § 1714, subd. (b).)

[12]When reviewing a motion for judgment on the pleadings, an appellate court liberally construes the allegations in the complaint, which means it assumes the truth of all facts that may be inferred reasonably from (1) the facts pled and (2) the facts contained in the exhibits to the complaint. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.)

19.

on the ground City Brewing was immune from civil liability pursuant to Civil Code section 1714, subdivision (b).

## V.      Products Liability Claims and Civil Code Section 1714.45

City Brewing also contends that the trial court's decision should be affirmed because manufacturers of alcohol are provided with a specific statutory immunity from product liability claims.  City Brewing argues it is protected by subdivision (a) of Civil Code section 1714. 45, which provides:

> "(a)  In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:
>
> "(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.
>
> "(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts."

City Brewing contends alcohol is a "common consumer product" and, because Four Loko contains alcohol, it too is a common consumer product.  In addition, City Brewing asserts that adding caffeine to Four Loko did not take it outside the scope of the statute because caffeine is "the most widely used stimulant in the world, and a component of many common beverages, alcoholic or not."

### A.      *How to Analyze a Multi-ingredient Product*

Implicit in the parties' arguments is a dispute about the proper method for analyzing a multi-ingredient product and determining whether it qualifies as a common consumer product for purposes of Civil Code section 1714.45.

City Brewing deconstructs[13] Four Loko into the products of alcohol and caffeine and asserts they both unquestionably are consumer products whose dangers are common knowledge. From this foundation, City Brewing concludes that Four Loko is a common consumer product.

First, City Brewing has cited no case or secondary authority that (1) expressly adopts the deconstructionist approach for a multi-ingredient product or (2) states the multi-ingredient product is a common consumer product if some or all of the ingredients, standing alone, qualify as a common consumer product.

Second, City Brewing's deconstruction of Four Loko is incomplete because it does not address all of the stimulants the complaint alleged were contained in Four Loko, such as guarana, taurine, and wormwood.[14] As a result, City Brewing has not demonstrated the risks inherent in those stimulants are matters of common knowledge.

Third, when a plaintiff alleges the manufacturer of a common consumer product has adulterated or contaminated that product, courts will not apply the immunity if the adulteration or contamination made the product unreasonably dangerous. (See *Naegele v.*

---

[13]The term "deconstruct" is used in this opinion to mean "to take apart or examine in order to reveal the basis or composition of often with the intention of exposing … flaws …." (Merriam-Webster's Online Dict. (2014) <http://www.merriam-webster.com/dictionary/deconstruct> [as of Nov. 6, 2014].) Here, City Brewing deconstructs Four Loko with the intention of showing the absence of flaws.

[14]Similarly, City Brewing's comparison of Four Loko to Irish coffee ignores the fact that Four Loko contained stimulants other than caffeine. By ignoring the other stimulants, City Brewing implies that they had no effect on the consumer. The record before us does not establish, as a matter of law, that the other stimulants had no effect and did not interact with the alcohol and caffeine. For instance, the 2006 article attached to plaintiff's complaint stated, "there are no studies discussing the interactions of alcohol and taurine on the cognitive performance in humans" and "[t]here is a paucity of studies on the interaction of alcohol and the remaining components of energy drinks." (Ferreira, *supra*, at p. 599.) Another reason the comparison between Four Loko and Irish coffee is unsound is that caffeine is not *added* to Irish coffee.

*R.J. Reynolds Tobacco Co.* (2002) 28 Cal.4th 856, 864 (*Naegele*); Rest.2d Torts, § 402A, com. i, p. 352.)  For instance, in *Naegele*, a smoker who developed lung cancer sued tobacco companies, alleging the companies manipulated the addictive properties of cigarettes by using additives and, more specifically, controlled nicotine delivery to the smoker by adding ammonia.  (*Naegele*, at p. 865.)  The conduct complained of occurred when tobacco was still listed in Civil Code section 1714.45 as an inherently unsafe common consumer product known to the ordinary consumer as unsafe.  The California Supreme Court concluded the statutory immunity did not bar claims alleging "tobacco companies, in the manufacture of cigarettes, used additives that exposed smokers to dangers beyond those commonly known to be associated with cigarette smoking."  (*Naegele*, at p. 861.)  The court stated the immunity statute was intended to protect tobacco companies that made and sold products containing tobacco that is pure and unadulterated.  (*Id*. at p. 862.)

Similarly, comment i to Section 402A of the Restatement Second of Torts (Restatement) describes unreasonably dangerous products by stating:

> "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous."

*Naegele* and section 402A of the Restatement demonstrate that the dangers and risks associated with the product in question must be considered as a whole.  We conclude the reasoning underlying this approach justifies extending it beyond contaminated product claims to cases where a plaintiff alleges some of the product's ingredients mask or enhance the dangerous attributes of other ingredients and thereby create an unreasonably dangerous product.  The law should not ignore interactive effects that might render a product more dangerous than is contemplated by the ordinary

22.

consumer who purchases it and possesses the ordinary knowledge common to the community as to the product's characteristics. Therefore, when a court addresses whether a multi-ingredient product is a common consumer product for purposes of Civil Code section 1714.45 and the ingredients have an interactive effect, the product and its inherent dangers must be considered as a whole so that the interactive effects of its ingredients are not overlooked or trivialized.

### B.    *Four Loko as a Common Consumer Product*

Here, plaintiff alleged (1) Four Loko's dangerousness was due to the *combination* of high levels of alcohol and stimulants and (2) alcoholic energy drinks, such as Four Loko, posed health risks by masking intoxication. Based on these allegations, which are accepted as true for purposes of this appeal, we conclude whether Four Loko was a common consumer product for purposes of Civil Code section 1714.45 must be determined by analyzing the beverage as a whole rather than considering the effects of its ingredients in isolation from one another.

The factors relevant to whether Four Loko was a common consumer product include, but are not limited to, (1) how long Four Loko and, more generally, alcoholic energy drinks have been available to consumers and (2) how well the effects of the product are understood.

The complaint alleged that Four Loko was created in 2005 and Four Loko and other alcoholic energy drinks were banned, in effect, by the November 2010 letters of the FDA and Federal Trade Commission. Thus, the product life of the version of Four Loko sold to Fiorini was relatively short when compared to the product life of the consumer products of "sugar, castor oil, alcohol, and butter" that are listed in subdivision (a)(2) of Civil Code section 1714.45. This short product life supports the inference that Four Loko was not a common consumer product.

23.

The community's understanding of alcoholic energy drinks is a topic addressed in the articles attached to plaintiff's complaint. The 2008 article stated that the effects of combining caffeine and the other ingredients of energy drinks (such as guarana, yerba mate, taurine, carnitine, creatine, ginkgo, biloba, ginseng and vitamins) are incompletely understood. The 2006 article addressing the ingestion of alcohol and energy drinks stated there was "little scientific evidence on the interaction of these substances." (Ferreira, *supra*, at p. 598.) These statements indicate the combination of stimulants and alcohol in Four Loko was not a common consumer product.

The foregoing inferences preclude us from finding, as a matter of law, that Four Loko was a common consumer product for purposes of Civil Code section 1714.45, subdivision (a).[15] As a result, that factual question should be presented to the trier of fact. BAJI No. 9.00.6 provides an example of how a jury can be instructed on both elements of the immunity provided by Civil Code section 1714.45, subdivision (a).

Lastly, we note the regulatory action by the FDA and the Federal Trade Commission does not establish (retroactively and as a matter of law) that premixed caffeinated alcoholic beverages, such as Four Loko, are not common consumer products for purposes of Civil Code section 1714.45, subdivision (a). The regulatory action was not a final adjudication of the application of federal law, such as the Food, Drug, and Cosmetic Act, to Four Loko. Also, the legal standards discussed by the FDA and Federal Trade Commission are not identical to those used determine if a beverage is a common consumer product under California law. Hence, the regulatory action does not resolve the issues relevant to the application of Civil Code section 1714.45, subdivision (a).

---

[15]Therefore, we need not address whether the facts alleged established the first statutory element for the immunity from product liability claims. The first element concerns whether the combination of alcohol and stimulants contained in Four Loko was "known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community." (Civ. Code, § 1714.45, subd. (a)(1).)

## DISPOSITION

The February 5, 2013, judgment in favor of City Brewing is reversed. The trial court is directed to vacate its ordering granting City Brewing's motion for judgment on the pleadings and file a new order denying that motion. Plaintiff shall recover his costs on appeal.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
GOMES, J.


_____
KANE, J.